MOVIE & VIDEO WORLD, INC., a Florida Corporation, et al., Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF PALM BEACH COUNTY, FLORIDA, et al., Defendants.

No. 89–8334–CIV.

United States District Court, S.D. Florida.

Oct. 11, 1989.

---

Mitchell Beers, Palm Beach Gardens, Fla., Daniel R. Aronson, Fletcher Baldwin, West Palm Beach, Fla., for plaintiffs.

Robert Banks, Jupiter, Fla., Ward Wagner, Jr., West Palm Beach, Fla., and Frank McKeown, Palm Beach, Fla., for defendants.

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

PAINE, District Judge.

This cause comes before the Court upon the Plaintiffs' motions for preliminary injunction (DE 2 and DE 72), and upon the hearing held on such matter on October 3, 1989 at West Palm Beach. At the hearing, Mr. Mitchell Beers appeared for all of the Plaintiffs except for Plaintiff Phoenix Limited which was represented by Mr. Daniel Aronson. The Defendants were represented by Mr. Bob Banks, who was assisted by Lee Rosenthal and Clark Cone who represented Defendant Yaun.

At the hearing the court granted Plaintiff Phoenix Limited's Motion to Intervene (DE 72). Mr. Aronson assured the court that his client's interests were adequately represented at the hearing and, therefore, this order is dispositive of all of the Plaintiffs', including Phoenix Limited, motions for preliminary injunction.

## BACKGROUND

On November 15, 1988, Palm Beach County adopted Palm Beach County Ordinances 88–31 and 88–32. Ordinance 88–31 includes regulations and licensing requirements for adult bookstores and theaters; ordinance 88–32 provides zoning requirements for adult entertainment establishments.

At the onset the court noted that the likelihood of prevailing on the challenge to Palm Beach County Ordinance 88–32, the zoning ordinance, is unlikely in light of the Supreme Court's approval of a similar zoning system regarding adult entertainment in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). In view of that case, there is no sound basis for an injunction against enforcement of Palm Beach County Ordinance 88–32.

Therefore, the focus of the hearing was the challenge to Palm Beach County Ordinance 88–31, a copy of which is attached hereto. Specifically, the Plaintiffs allege:

(1) the door removal requirement is a suppression of free-expression in violation of the First Amendment.

(2) some of the definitions contained in Palm Beach County Ordinance I(G) are vague and overbroad.

(3) the application process and licensing requirements for adult establishments (contained in Palm Beach County Ordinance 88–31(II)) are underinclusive because non-adult bookstores are not subject to such rigid requirements.

## STANDARD OF REVIEW

The following four elements must be proved by the Plaintiff in order to prevail on a motion for preliminary injunction:

1) irreparable injury unless an injunction is entered;

2) a substantial likelihood that the Plaintiff will prevail on the merits of the claim;

3) the threatened injury to the Plaintiff outweighs the threatened harm that an injunction may cause to the Defendant;

4) the granting of a preliminary injunction will not be adverse to public interest. *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983).

Since the Defendant agreed for the purpose of the preliminary injunction that irreparable injury could be presumed, we will begin our analysis with the second prerequisite for a preliminary injunction, to wit: is there a substantial likelihood that the

Plaintiff will prevail on the merits of the claim?

## LIKELIHOOD OF PREVAILING ON THE MERITS

A. The Door Removal Requirement

■ When speech and non-speech elements are combined, government regulation which restricts the time, place and manner of the exercise of First Amendment rights is sufficiently justified if it meets the following 4–prong test set out by the Supreme Court:

[W]hen "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms ... we think it clear that a government regulation is sufficiently justified

[ (1) ] if it is within the constitutional power of the Government;

[ (2) ] if it furthers an important or substantial governmental interest;

[ (3) ] if the governmental interest is unrelated to the suppression of free expression; and

[ (4) ] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) [numbering not in original] (hereafter *O'Brien* ).

More recently the Supreme Court declared that if an ordinance does not ban adult theaters altogether, it is properly analyzed as a form of time, place, and manner regulation. *City of Renton v. Playtime Theatres Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (hereafter *Renton* ). The court further held that such content-neutral time, place, and manner regulations are acceptable so long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication. *Renton,* 96 S.Ct. at 928. When determining the constitutionality of a statute, the court must look to the predominate concern of the

legislature in regulating the ills produced by adult theaters; if the legislature targeted the legislation at the secondary effects rather than at the content of the film themselves, it is "more than adequate to establish that the city's pursuit of its interests is unrelated to the suppression of free expression, and thus the ordinance is to be considered a content-neutral speech regulation." *Id.*

While the Defendant argues that these 2 tests are divergent, the court finds that in this case, the result under either of these tests is the same. The *O'Brien* test is to be applied when the *activity/expression* includes both elements of speech and nonspeech, such as in the present case. The *Renton* test is to be used to determine if the enacted *legislation* which addresses such activity is content-neutral or intended to suppress free expression.

We begin with the 4–prong *O'Brien* test. The first prong is easily satisfied. It is clearly within the constitutional power of Palm Beach County to enact and enforce regulations for the purpose of providing for the health, welfare, and safety of its residents. *See* Florida Statutes, Chapter 125 (County Government).

The second prong under *O'Brien* is whether the legislation furthers an important or substantial government interest. This requires a closer look at the facts and data relied upon when enacting ordinance 88–31. While the actual record was not fully developed by the Defendant at the hearing on the preliminary injunction, the Defendant offered into evidence the items presented at the July 5, 1988 and November 15, 1988 meetings of the Palm Beach County Board of County Commissioners. The evidence was admitted without objection and the court considers those exhibits herein.

The exhibits considered by the Board of County Commissioners include a Memo from the City Attorney reporting that members of the public and the Sheriff's Department expressed concern regarding the sexual activities which occur within or in relation to adult entertainment establishments. Specifically, the Memo concludes

that such activities contribute to the possible spread of contagious diseases. The Commissioners also considered the experiences of other communities and the solutions employed by them to curtail the possible spread of infection within adult-oriented establishments. Considering the experiences of other communities was specifically sanctioned by the Supreme Court in *Renton,* supra.

The court finds the most interesting and, perhaps the most persuasive exhibit considered by the Board to be a letter apparently sent to owners of Adult Bookstores/Mini–Movies in Palm Beach County from Dale Tavris, M.D., M.P.H., the then Chief Epidemiologist of Palm Beach County and the present expert witness on behalf of the *Plaintiff.* In that undated letter, Dr. Tavris said that recent reports and conditions regarding these establishments have led the Palm Beach County Health Department to request cooperation to combat the *epidemic* spread of Acquired Immune Deficiency Syndrome (AIDS) in the community. Dr. Tavris concluded, "Your peep show establishment is a setting in which there is a high probability of the presence of persons with or suspected of being infected with the AIDS virus (HIV), which is significantly affecting the public health of our community. Therefore, any sexual activity on your premises between such patrons or others, increases the likelihood of the spread of the lethal disease AIDS, and thus, in our opinion, constitutes a major public health hazard."

After considering the evidence presented at the meetings, Palm Beach County Board of Commissioners could reasonably conclude that some video booth patrons would be more likely to engage in sexual activities with one another behind closed-door video booths than in open cubicles, visible from a common-aisle. In fact, the Plaintiff concedes and several Defense witnesses testified that semen has been found on the walls and floors, ceilings and video machinery inside these closed-door video booths. The Plaintiff admitted that the semen found inside the booths comes from patrons masturbating. However, they argue that there is no interactive sexual activity

going on behind these closed doors. Although the court disagrees and finds that the likelihood of interactive sexual activity is increased by the possibility of closed-doors on the video booths, for the following reasons it is not necessary to employ this conclusion as a basis for the court's decision. The Plaintiffs' medical witness, Dr. Dale Tavris testified that there is only a *slight* possibility that AIDS and other diseases could be spread by masturbation or by ejaculated semen left exposed on the interior of the booths. The court finds this testimony to be credible but notes that even Dr. Tavris admits that there is a *possibility,* however slight, of such transmission and that the medical field does not use the word "impossible" when making predictions based on scientific testing and data.

The Eleventh Circuit has held that a local government is not required to experience "actual deleterious effects before it can regulate" a social ill as the cause. *International Food and Beverage Systems v. City of Fort Lauderdale,* 794 F.2d 1520, 1527 (11th Cir.1986) (hereafter *International Food* ). Therefore, the Board of Commissioners reasonably concluded that the possibility of casual sexual activity *could* create the danger of spreading AIDS and other sexually transmitted diseases. Finally, this court finds that Palm Beach County has a "substantial interest in ensuring sanitary, not just safe, public places." *Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585, 590 (E.D.Wis.1988).

The above analysis satisfies the second prong under the *O'Brien* test and the court finds that the door removal requirement furthers an important *and* substantial governmental interest.

The third prong of the *O'Brien* test requires that the government interest be unrelated to the suppression of free expression. In this case, just as in 'the *Renton* case, the predominant concern of the legislature in regulating adult theaters was, not the content of the films themselves, but rather, the secondary effects of the closed-door video booths. As the *Renton* Court held. this is "more than adequate to estab-

lish that the [legislation] was unrelated to the suppression of free expression." *Renton*, 106 S.Ct. at 929.

The Plaintiff suggests that the legislature's true intent is, not to curb the "secondary effects," but rather to close the establishment and suppress the content of the films it offers for viewing. However, on its face the statute's stated reasons are to combat the possible spread of disease and to control crime. The record does not support any intention to suppress the content of the films themselves. Ordinance 88–31 does not ban the showing of sexually explicit videos and in no way limits access to or availability of such videos. It merely regulates the manner in which the films can be viewed. Additionally, the court will not strike down otherwise constitutional legislation on the basis of a "speculated illicit legislative motive." *International Beverage*, 794 F.2d at 1525, citing *O'Brien*, 88 S.Ct. at 1682.

■ The Plaintiff further argues that even if the legislation is aimed at the secondary effects, the enforcement of the ordinance will result in a "chilling effect" on First Amendment Freedom to watch sexually explicit films. However, the chilling effect argument requires a factual basis upon which to conclude that First Amendment freedom would be thwarted. *See Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1247 (9th Cir.1982) citing *Laird v. Tatum*, 408 U.S. 1, 12–16, 92 S.Ct. 2318, 2325–27, 33 L.Ed.2d 154 (1972). At the hearing Mr. Keoski, the Plaintiff-owner, testified that "some" of his customers told him that they would not pay to watch films in the booths if there were no doors on the video booths. This alone does not, in the opinion of this court, constitute a sound factual basis upon which the Court could conclude that the legislation will result in a chilling effect on protected First Amendment freedom. If anonymity is the alleged reason offered in favor of keeping the doors, this court is compelled to point out that Plaintiffs' Exhibit #1, a videotape of the 45th Street Bookstore and Movie–Video World showed that the store-front is on a busy street and, as the Plaintiff himself pointed out, across from a high-traffic shopping plaza. Therefore, anonymity is destroyed even before the patron entered the building and the court finds no merit to the anonymity argument. *See Ellwest Stereo Theatres v. Wenner*, 681 F.2d at 1247.

Mr. Keoski also testified that he speculated that his business would diminish by 80 percent if Ordinance 88–31 is enforced. In *International Food*, supra, the Eleventh Circuit held that the First Amendment does not guarantee anyone profit; all it requires is that speech, expression, and ideas be allowed a physically adequate forum. *Id.* at 1526.

The court finds that Ordinance 88–31 is unrelated to the suppression of free expression and, therefore, satisfies the 3rd prong of the *O'Brien* test.

The final requirement under *O'Brien* is that the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the governmental interest. In this case, the Plaintiff suggests that the goal of preventing sexually transmitted diseases could also be served by posting warning signs and ensuring that only one person enter a booth at a time. However, Deputy Sheriff Gerald King of the Sheriff's Department and Mr Keoski himself testified that in the past there have been such signs posted in these establishments. In light of Deputy Sheriff King's testimony that masturbation and possibly interactive sexual activity is still occurring inside these video booths, the court finds that these alternative means suggested by the Plaintiff have proved to be unsuccessful at curbing the potential for sexual activity in this public place.

Additionally, even if the Plaintiff's suggested alternatives proved to be successful at assuring one-person per booth and no interactive sexual activity, there still exists the probability that masturbation will occur inside these booths as it has in the past. As noted earlier, while there is only a slight possibility that contact with ejaculated semen could result in AIDS or other diseases, Palm Beach County is permitted

to enact time/place/manner restrictions in an attempt to curtail the possibility of harm to the health of the community. As the *Renton* court noted, such restrictions are constitutional as long as "whatever evidence the county relied upon is believed to be relevant to the problem that the county addresses." *Renton*, 106 S.Ct. at 931.

The court is satisfied that the least restrictive means to prohibit masturbation and casual sexual conduct in video booths is to remove the doors of such booths so as to chill not the viewing of sexually explicit films, but the secondary ills associated with and threatened by masturbation and interactive sexual conduct in these public places.

Under the *O'Brien* test, the court concludes that because of Palm Beach County's substantial interest in assuring the safety and cleanliness of its public places as well as the health of its citizens; and because the ordinance is an appropriately narrow means of protecting this interest and condemns only the independent noncommunicative impact of *conduct* within the reach of the Ordinance; and because the noncommunicative impact of masturbation and interactive sexual activity frustrate the County's interest, a sufficient governmental interest has been shown to justify Palm Beach County Ordinance 88–31.

Having determined that the legislation meets the *O'Brien* test for mixed speech and non-speech activity, we next apply the *Renton* test to determine if the legislation is, in fact, content-neutral as applied to the mixed-element activity. The first part of the *Renton* test is satisfied by the *O'Brien* analysis. The Court has determined that the ordinance does not ban adult theaters and is designed to serve a substantial governmental interest.

The only *Renton* requirement left to satisfy, then, is that the legislation does not unreasonably limit alternative avenues of communication. *Renton* at 106 S.Ct. at 932. In the present case, Palm Beach Ordinance 88–31 does not attempt to inhibit the *viewing* of sexually explicit videos either in public video booths or by rental or purchase for viewing in the privacy of one's own home. Additionally, it does not dictate what may or may not be shown and does not ban or limit the number of booths in one video store. Therefore, the court finds that the content-neutral time/place/manner regulation of protected First Amendment freedom does not unreasonably limit alternative avenues of communication. In fact, the court finds that one who wishes to view a sexually explicit film need not engage in any *alternative* avenue to do so because the video-booth option for *viewing* has not been banned by Ordinance 88–31. Video-booths remain an option for those who wish to exercise their First Amendment freedom to *view* such a film. The court is satisfied that those rights which are protected by the constitution are not infringed upon by the door removal requirement.

Therefore, the court concludes under *Renton* that Palm Beach Ordinance 88–31 represents a valid government response to the serious problems created by video booths in adult theaters. Furthermore, the County has not used the police power to protect the health and welfare of the community as a pretext for suppressing expression but rather it has been used as a balance to address and combat the spread of contagious diseases such as AIDS. The balance is successful: Palm Beach County Ordinance 88–31 achieves the stated goals while also satisfying the dictates of the First Amendment.

Therefore, regulation of the mixed-element activity by the enactment and enforcement of this content-neutral legislation meets both the *O'Brien* and the *Renton* tests set out by the Supreme Court.

Finally, the federal courts have unanimously upheld the open-booth requirement and this court has found no cause to take exception. *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243 (9th Cir.1982); *Wall Distributors, Inc., v. City of Newport News*, 782 F.2d 1165 (4th Cir.1986); *FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298 (5th Cir.1988), *cert. granted* —— U.S. ——, 109 S.Ct. 1309, 103 L.Ed.2d 578 (1989); *Berg v. Health & Hospital Corp of Marion County*, 865 F.2d 797 (7th Cir. 1989); *Broadway Books, Inc. v. Roberts*,

642 F.Supp. 486 (E.D.Tenn.1986); *Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585 (E.D.Wis.1988); *Postscript Enterprises v. City of Bridgeton,* 699 F.Supp. 1393 (E.D.Mo.1988).

Having determined that the likelihood of prevailing on the merits of the open-door requirement is not substantial but rather unlikely, the court need not analyze the final balancing prerequisites for a preliminary injunction. There is no basis for issuing an injunction against the enforcement of the constitutional open-door provisions of Palm Beach County Ordinance 88–31.

**B. Definitions as Vague and Overbroad**

█ The Plaintiff challenges some of the definitions contained in Palm Beach County Ordinance Section I(G) as being vague and overbroad. At the hearing on this motion the Plaintiff specifically challenged the definitions of *adult bookstore* (contained in I(G)(2)); *adult entertainment establishment* (contained in I(G)(5)); *adult material* (contained in I(G)(6)); and *operator* (contained in I(G)(23)).

As to the definitions of adult bookstore, adult entertainment establishment and adult material, the court finds that the Plaintiffs lack standing to challenge these as being vague and overbroad because they have, in fact, admitted that these same definitions are applicable to their establishments in this case. Where a Plaintiff has acknowledged that definitions are applicable to himself and his establishment, the definition is said to be sufficiently precise to leave the Plaintiff in no doubt about whether his actions are covered. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Addressing the possible exception to the standing requirement for statutes purported to prohibit protected speech, the court said:

"If the statute's deterrent effect on legitimate expression is not 'both real and substantial,' and if the statute is 'readily subject to a narrowing construction by state courts,' see *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975), the litigant is not permitted to assert the right of the third parties."

*Id.,* 96 S.Ct. at 2447.

This court has already found that Palm Beach County Ordinance 88–31 does not serve as a "real and substantial" deterrent effect on any legitimate expression. Furthermore, the statute meets the second part of the *Young* test as these challenged definitions are clear enough to be "readily subject to narrowing construction by state courts." The Plaintiffs are not entitled to the exception to the standing requirement under *Young* and, therefore, they lack standing to challenge these definitions as being vague or overly broad.

█ We next consider the definition of operator as challenged by the Plaintiffs. The Plaintiffs point out that employees of the adult bookstore are subject to criminal liability under Section (IV)(O) of the ordinance. The court finds that this is the intended effect of the statute and the definition is properly tailored to include these persons as operators. The argument that these persons are not managers and, therefore, cannot make managerial decisions is not persuasive as an argument that this definition is vague or overbroad. The ordinance clearly defines who is to be considered an operator. Therefore, the Plaintiffs' employees are afforded fair notice of inclusion under this definition and they have adequate opportunity to adjust their own behavior accordingly so as to conform with the statute.

The Plaintiffs further argue that the definition is vague and overbroad because it could implicate, *inter alia,* any person who is hired for the purposes of providing maintenance and repair work for the adult video store. The court finds that such an application is unlikely. Additionally, the vagueness prohibition is not meant to invalidate every enactment that could have been drafted with greater precision. *Harper v. Lindsay,* 616 F.2d 849, 857 (5th Cir.1980).

In view of the foregoing, this court finds that the likelihood of prevailing on the merits of the challenge to Palm Beach County Ordinance Section (I)(G) is slim. Therefore, an injunction will not be issued against

enforcement of this section of the ordinance.

## C. The Application Process and Licensing Requirements

### 1. *Disclosure Requirements*

The Plaintiffs contend that there is no rational basis for the disclosure requirements of the application for a license found in Section (II)(C) of the ordinance. Further, they allege that non-adult bookstores need not conform with such extensive and intrusive disclosures and there is no reasonable relationship between the governmental interest of preventing the spread of diseases and the following disclosures required by Section (II)(C)(2):

1) Listing all the individuals involved in the partnership, limited or otherwise, and the legal names and dates of birth of all officers, directors, and principle stockholders of the corporations owning Plaintiffs' business.

2) Whether the applicant or any other individuals listed (in the partnership, corporation, or otherwise), have ever been convicted of a specified criminal act, and if so, the specific criminal act, date of conviction, and place of conviction.

3) Whether the applicant or any other individual listed as indicated above (partnership corporation) have had a previous license under the code suspended or revoked, or whether the applicant has been a partner in a partnership, or officer, director, or principle stockholder in a corporation whose license under the code has been previously suspended or revoked.

4) The names of all employees, dates of birth, aliases.

5) Site plan and survey.

6) Floor Plans drawn to appropriate scale of the establishment including all windows, doors, entrances, all fixed structural interior features etc.

The Plaintiffs argument that the above requirements are underinclusive because they do not apply to non-adult bookstores is not persuasive on this issue. The First Amendment does not prohibit the government from classifying adult-oriented establishments differently from other places even if First Amendment Rights are impacted by the classification. *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *City of Renton v. Playtime Theatre, supra.*

However, the court finds the Plaintiffs' initial argument on this issue to be meritorious. The Defendant argues in opposition that the purpose of Ordinance 88–31 is not merely to regulate the transmission of AIDS but, rather, to serve as a comprehensive regulatory scheme to control the secondary effects of all adult entertainment establishments and to enforce the appropriate zoning ordinance. The Defendant urges that this is ample justification for the detailed disclosure requirements. The court does not agree.

There is no governmental interest in determining the identity and personal history of limited partners and stockholders who are not involved in the adult establishment's daily business. Additionally, the court finds no logical relation between the applicant's, partner's, or shareholder's prior felony convictions and the stated purposes of the ordinance. Finally, the names of all employees, dates of birth and aliases used for the proposed establishment are also irrelevant to the stated purpose of the ordinance.[1]

In view of the foregoing, the disclosure requirements contained in (II)(C)(2)(b), (d) and (i)[2] "invade Plaintiffs' privacy without any legitimate justification [so] they are prohibited by the First and Fourteenth

---

1. It is important to note that the 1989 Amendment to Ordinance 88–31 apparently does away with this final request for disclosure of information regarding employees. However, both the Plaintiffs and the Defendants have referred to it in even the latest arguments and so the court will consider the constitutionality of this provision.

2. Before the apparent 1989 amendment to section (II)(C)(2)(i).

Amendments." *Genusa v. City of Peoria,* 619 F.2d 1203, 1216 (7th Cir.1980).

■ However, the Defendant has offered adequate justification for the disclosure requirement contained in (II)(C)(2)(e). This provision, which requires disclosure of the status of prior licenses under the ordinance, is intended to enforce section (II)(E)(4)(c) of the ordinance which provides for denial of a license application if the applicant has previously had his adult entertainment license suspended or revoked. The court finds that both of these provisions are reasonably related to the stated purpose and enforcement of the ordinance.

■ Finally, the provisions requiring a site-plan, survey, and floor plan are also related to the governmental purpose in this case. Since licensure of an adult entertainment establishment requires inspection by the Building Division, the Public Health Unit, the Fire–Rescue, and the Sheriff, the requisite site-plan, survey and floor plan are necessary to determine, *inter alia,* if the establishment meets the requirements under the ordinance.

Additionally, the disclosure of these plans is not unduly intrusive on the Plaintiffs as the ordinance merely requires disclosure of the physical features of their establishments—public places. The government could simply walk into the establishments to discover if the applicant has complied with the ordinance. In light of that fact, coupled with the fact that the government has a legitimate interest in enforcing this ordinance and the requirement of submission of these plans is reasonably related to such interest, these disclosure requirements are held to be constitutional.

2. *License Fees*

■ The Plaintiff also challenges the annual license fee of eight-hundred dollars plus forty dollars per adult video booth (contained in Section II(G)(6) of the ordinance). The court is satisfied that these fees are reasonably related to the cost of expenses expected to be incurred when administering and implementing the application and licensing scheme of the ordinance.

The statute itself states that the licensing fees are "regulatory fees collected for the purpose of examination and periodic inspection of Adult Entertainment Establishments." (*See* Section (II)(G)(6)(f)). The court agrees that this ordinance and application process require a good deal of effort on the part of the government agencies to administer and enforce. Therefore, the licensing fee is reasonably related to the government's legitimate interest in enforcing this ordinance.

## BALANCING

Having determined that there is a substantial likelihood of prevailing on the merits of the challenge to Palm Beach County Ordinance Section (II)(C)(2)(b), (II)(C)(2)(d), and (II)(C)(2)(i), we must continue the analysis to determine if all four prerequisites for a preliminary injunction are satisfied.

The third prerequisite which the Plaintiff must prove to prevail on a motion for preliminary injunction is that the threatened injury to the Plaintiff outweighs the threatened harm that an injunction may cause to the Defendant. The court finds that the threatened injury to the Plaintiffs if they comply with Section (II)(C)(2)(b), (d), and (i) of the ordinance is great since it is this very disclosure of requested information that they seek to thwart. Once the information is disclosed, any subsequent success on the merits will be meaningless to the Plaintiffs since the Defendant would already have the requested information. On the other hand, the threatened harm to the defendant is slight since the requested information is not necessary to the successful enforcement of the ordinance.

## PUBLIC INTEREST

The granting of a preliminary injunction against enforcement of Section (II)(C)(2)(b), (d), and (i) will not be adverse to public interest. The remainder of the ordinance would remain in full force and effect and this section is not critical to achieve the desired purpose of the ordinance.

## SEVERABILITY

The Supreme Court has held that a statute is presumed divisible where the legislature provides that the invalidity of any section shall not affect the validity of others. *Williams v. Standard Oil Co. of Louisiana,* 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287 (1929). Palm Beach County Ordinance 88–31(V)(A), Section 4 entitled "Severability" declares that if any part of this code is held to be unconstitutional or invalid, it shall be severable from the other parts of the code; the remaining portions and provisions shall remain in full force and effect. Additionally, the law of this Circuit obligates this court to sustain the constitutionality of an ordinance whenever possible by severing invalid clauses and permitting the remainder of the act to stand. *Scheinberg v. Smith,* 659 F.2d 476, 481 (5th Cir. Unit B. 1981). Therefore, in view of the foregoing, it is

ORDERED and ADJUDGED that the Motion for Preliminary Injunction as it applies to the open-door requirement of Palm Beach County Ordinance 88–31 is DENIED because the requirement that the doors be removed is constitutional. Further, it is

ORDERED and ADJUDGED that the Motion for Preliminary Injunction as it applies to Definitions contained in Palm Beach County Ordinance 88–31(I)(G) is DENIED as the court finds that these definitions pass constitutional muster. Additionally, it is

ORDERED and ADJUDGED that the Motion for Preliminary Injunction as it applies to the licensing fees contained in Palm Beach County Ordinance 88–31 is DENIED. Finally, it is

ORDERED and ADJUDGED that the Motion for Preliminary Injunction as it applies to the application requirements contained in Palm Beach County Ordinance (II)(C) is DENIED in part and GRANTED only as it pertains to the disclosure requirements in Sections (II)(C)(2)(b), (II)(C)(2)(d), and (II)(C)(2)(i). A preliminary injunction is hereby issued against enforcement of these three sections of Palm Beach County Ordinance 88–31.

DONE and ORDERED.

## APPENDIX

tc:vb:11/15/88:adult entertainment ordinance

### ORDINANCE NO. 88–31

AN ORDINANCE OF THE BOARD OF COUNTY COMMISSIONERS OF PALM BEACH COUNTY, FLORIDA, ENACTING THE ADULT ENTERTAINMENT CODE; PROVIDING FOR TITLE, LEGISLATIVE AUTHORITY, JURISDICTION, RULES OF CONSTRUCTION, PURPOSE, FINDINGS OF FACT, AND DEFINITIONS; REQUIRING CERTAIN LICENSING REQUIREMENTS FOR ADULT ENTERTAINMENT ESTABLISHMENTS INCLUDING APPLICATION REQUIREMENTS, ENFORCEMENT PROVISIONS, SUSPENSION, AND REVOCATION OF LICENSES; AUTHORIZING LICENSE FEES; ESTABLISHING GENERAL REQUIREMENTS FOR ALL ADULT ENTERTAINMENT ESTABLISHMENTS; PROVIDING FOR PROHIBITION OF ALCOHOLIC BEVERAGES; PROVIDING FOR SUPPLEMENTAL REQUIREMENTS, REGULATIONS, AND PROHIBITIONS, INCLUDING BUT NOT LIMITED TO LISTING EMPLOYEES, ARCHITECTURAL/DESIGN REQUIREMENTS, TOUCHING, PRIVATE PERFORMANCES, SEXUAL ACTIVITY, ADVERTISING, MINORS, ADULT THEATERS AND BOOTHS, AND HOURS OF OPERATION; PROVIDING FOR CIVIL AND CRIMINAL PENALTIES; ESTABLISHING APPEALS; PROVIDING SEVERABILITY; PROVIDING AN EFFECTIVE DATE.

WHEREAS, the Board of County Commissioners of Palm Beach County in the exercise of its police powers to protect the public health, safety, peace, and general welfare, and in response to the concerns of the Sheriff of Palm Beach County and numerous residents of Palm Beach County, have through public hearing, heard interested parties and citizens for and against the purposes of this Ordinance; and

WHEREAS, Chapter 125 (County Government) of Florida Statutes establishes the right and power of counties to provide for the health, welfare, and safety of existing and future residents by enacting and enforcing regulations on Adult Entertainment Establishments; and

WHEREAS, the Board of County Commissioners of Palm Beach County finds and declares that establishments exist or may exist within Palm Beach County, Florida, where books, magazines, motion pictures, prints, photographs, periodicals, records, novelties and/or devices which depict, illustrate, describe or relate to specified sexual activities are possessed, displayed, exhibited, distributed and/or sold; and

WHEREAS, the Board of County Commissioners of Palm Beach County finds and declares that establishments exist or may exist within Palm Beach County, Florida:

(1) where dancers, entertainers, performers or other individuals who for any form of commercial gain perform or are presented while displaying or exposing specified anatomical areas; or

(2) where lap dancing occurs; and

WHEREAS, the Board of County Commissioners of Palm Beach County, Florida, finds and declares that the activities described above occur at establishments for the purpose of making a profit and as such are subject to regulation by Palm Beach County, Florida in the interests of the health, safety, welfare, morals and general welfare of the people of Palm Beach County; and

WHEREAS, there exists no method by which to verify that Adult Entertainment Establishments meet the zoning locational requirements of § 500.31; and

WHEREAS, a licensing system provides the least restrictive means to insure the zoning locational requirements of § 500.31 are followed; and

WHEREAS, the Board of County Commissioners of Palm Beach County, Florida, finds and declares that when activities described above are present in establishments within Palm Beach County, other activities which are illegal, or unhealthful tend to accompany them, concentrate around them, or to be aggravated by them. Such activities include but are not limited to, prostitution, solicitation for prostitution, lewd and lascivious behavior, exposing minors to harmful materials, possession, distribution and transportation of obscene materials, sale or possession of controlled substances, and violent crimes against persons and properties; and

WHEREAS, the Board of County Commissioners of Palm Beach County, Florida, finds and declares that when the activities described above are present in establishments within Palm Beach County, Florida, there is an increased amount on average of criminal activity which requires additional law enforcement resources; and

WHEREAS, a licensing system is the least restrictive means to limit or prevent the type of environment which fosters and encourages the criminal behavior described above; and

WHEREAS, a licensing system is the least restrictive means to insure that patrons of Adult Entertainment establishments do not engage in sexual activities within these establishments, thereby preventing and limiting the spread of communicable diseases.

NOW THEREFORE, be it ordained by the Board of County Commissioners, as follows:

Section 1. An Ordinance is hereby created to read as follows and herein shall be known as the "Adult Entertainment Code" of Palm Beach County:

## ADULT ENTERTAINMENT CODE

### I. GENERAL PROVISIONS

A. Title. This Chapter shall be known and may be cited as the "Adult Entertainment Code."

B. Authority. The Adult Entertainment Code is enacted pursuant to the Home Rule of Power of Palm Beach County, Florida, in the interest of the public health, peace, safety, morals, and general welfare of the people of Palm

Beach County, Article VIII, Section 1(g) of the Florida Constitution, Section 125.01(1)(o) and (w) of Florida Statutes 1987, and the authority of Palm Beach County to regulate the sale and consumption of alcoholic beverages under the Twenty–First Amendment to the Constitution of the United States, as recognized by the Florida Courts in the *City of Daytona Beach v. Del Percio* and *Fillingim v. The State.*

C. Jurisdiction. The Adult Entertainment Code shall be effective throughout the unincorporated areas of Palm Beach County, Florida. This Ordinance shall be effective in municipalities unless the municipality opts out or shall be effective up to the extent of conflict with the municipal ordinance. Except for the Sheriff's Department and the Palm Beach County Public Health Unit, within municipalities the respective Municipal Departments which regulate Fire, Building and Zoning shall be responsible for the Administration of this Ordinance as set out in II(B), below.

D. Findings of Facts. Based on the evidence and testimony presented at July 5, 1988, first reading at October 25, 1988, and at the public hearing November 15, 1988 before the Board of County Commissioners of Palm Beach County, Florida, and on the findings incorporated in the United States Attorney General's Commission on Pornography (1986), "A Summary of a National Survey of Real Estate Appraisers Regarding the Effect of Adult Bookstores on Property Values," conducted by the Division of Planning, Department of Metropolitan Development, City of Indianapolis, January 1984, the "Study of the Effects of Concentration of Adult Entertainment Establishments in the City of Los Angeles," conducted by the Planning Committee for the Los Angeles City Council, June 1977, the study conducted by the City of Austin, Texas, the Metropolitan Bureau of Investigation (MBI)

for the Ninth Judicial Circuit (Orlando area) and information from Tampa, Florida detailing the effects of Adult Entertainment Establishments in the Tampa area, the Board hereby finds:

1. Establishments exist or may exist within Palm Beach County, Florida, where books, magazines, motion pictures, prints, photographs, periodicals, records, novelties and/or devices which depict, illustrate, describe or relate to specified sexual activities are possessed, displayed, exhibited, distributed and/or sold.

2. Establishments exist or may exist within Palm Beach County, Florida:

   a. where the superficial tissues of one person are manipulated, rubbed, stroked, kneaded, and/or tapped by a second person, accompanied by the display or exposure of specified anatomical areas;

   b. where dancers, entertainers, performers, or other individuals, who, for any form of commercial gain, perform or are presented while displaying or exposing any specified anatomical area; or

   c. where lap dancing occurs.

3. The activities described in subsections (1) and (2) occur at establishments for the purpose of making a profit, and, as such, are subject to regulation by Palm Beach County, Florida in the interest of the health, safety, morals and general welfare of the people of Palm Beach County.

4. The competitive commercial exploitation of such nudity and semi-nudity is adverse to the public's interest and the quality of life, tone of commerce, and total community environment in Palm Beach County.

5. The commercial exploitation of nudity and semi-nudity consists of the use of nude and semi-nude entertainment in connection with or for the promotion of the sale of goods or services, and the receipt of money by the person engaging in nude or semi-nude entertainment in ex-

change for or as consideration for nude semi-nude performance by such individuals.

6. The commercial exploitation of nude and semi-nude acts, exhibitions, and nude entertainment frequently occurs at commercial establishments either selling or allowing consumption of alcoholic beverages on the premises.

7. There is a direct relationship between the consumption of alcoholic beverages and the nude and semi-nude activities mentioned above, and an increase in criminal activities, moral degradation and the disturbances of the peace and the good order of the community. The concurrences of these activities is hazardous to the health and the safety of those persons in attendance, and tends to depreciate the value of adjoining property and harm the economic welfare of the community as a whole.

8. The combination of the sale and consumption of alcoholic beverages with the performance of nude and semi-nude acts, exhibitions, and entertainment is adverse to the public's interest and the quality of life, tone of commerce and total community environment in Palm Beach County.

9. In order to promote and preserve the public peace and good order and to safeguard the health, safety, morals and welfare of the community and the citizens thereof, it is necessary and advisable for Palm Beach County to prohibit certain forms of nude and semi-nude acts, exhibitions, entertainment and commercial establishments at which alcoholic beverages are, or are available to be sold or consumed.

10. In order to preserve the public peace and good order, and to safeguard the health, safety, morals, and welfare of the community and citizens thereof it is necessary and advisable to regulate and restrict the conduct of owners, operators, agents, employees, entertainers, performers, patrons, spectators, and persons on the premises of the commercial establishment subject hereto.

11. There is a direct relationship between the display or depiction of specified anatomical areas in subsection (2) and an increase in criminal activities, moral degradation and disturbances of the peace and good order of the community and the concurrencies of these activities is hazardous to the health and safety of those persons in attendance and tends to depreciate the value of adjoining property and harm the economic welfare of the community as a whole. These secondary effects are adverse to the public's interest and quality of life, tone of commerce and total community environment in Palm Beach County.

12. When the activities described in subsections (1) and (2) are presented in establishments within Palm Beach County, Florida, other activities which are illegal, immoral, or unhealthful tend to accompany them, concentrate around them, and be aggravated by them. Such other activities include, but are not limited to, prostitution, solicitation for prostitution, lewd and lascivious behavior, possession, distribution and transportation of obscene materials, sale or possession of controlled substances, and violent crimes against persons and property.

13. When the activities described in subsections (1) and (2) are present in establishments within Palm Beach County, Florida, they tend to blight neighborhoods, adversely affect neighboring businesses, lower property values, foster an atmosphere which promotes crime, particularly the kinds detailed in subsection (5) and ultimately lead residents and businesses to move to other locations.

14. Physical contact within establishments at which the activities described in subsections (1) and (2) occur between employees exhibiting specified anatomical areas and customers poses a threat to the health of both and may lead to the spread of communicable and social diseases.

15. In order to preserve and safeguard the health, safety, morals, and general welfare of the people of Palm Beach County, Florida, it is necessary and advisable for Palm Beach County, Florida, to regulate the conduct of owners, managers, operators, agents, employees, entertainers, performers, and customers at establishments where the activities described in subsections (1) and (2) occur.

16. The potential dangers to the health, safety, morals, and general welfare of the people of Palm Beach County, Florida from the activities described in subsections (1) and (2) occurring at establishments without first obtaining a license under this Code are so great as to require the licensure of such establishments prior to their being permitted to operate.

17. "Lap dancing" does not contain any element of communication, and is therefore conduct rather than expression.

18. "Lap dancing" in establishments poses a threat to the health of the participants and promotes the spread of communicable and social diseases.

19. The County Commission finds that sexually oriented business is frequently used for unlawful and unhealthy sexual activities, including prostitution and sexual liaison of a casual nature.

20. The concern over sexually transmitted diseases is a legitimate health concern of the County which demands reasonable regulations of sexually oriented businesses in order to protect the health and well-being of the citizens.

21. Licensing is a legitimate reasonable means of accountability to ensure that operators of sexually oriented businesses comply with the reasonable regulations within this Code and the locational requirements of § 500.31 of the Zoning Code, and to ensure that operators do not knowingly allow their establishments to be used as places of illegal sexual activity or solicitation.

E. Rules of Construction. The Adult Entertainment Code shall be liberally construed to accomplish its purpose of licensing, regulating and dispersing adult entertainment establishments. Rules of Construction of Section 1–2 of the Palm Beach County Code shall govern.

F. Purpose. It is the intent of the Board of County Commissioners of Palm Beach County, Florida, in adopting the Adult Entertainment Code to establish reasonable and uniform regulations that will reduce the adverse secondary effects adult entertainment establishments have upon the residents of Palm Beach County and protect the health, safety, morals and general welfare of the people of Palm Beach County, Florida.

G. Definitions. In the Adult Entertainment Code, unless the context suggests otherwise:

1. Adult Arcade Any place or establishment operated for commercial gain which invites or permits the public to view adult material. For purposes of this Code, Adult Arcade is included within the definition of Adult Theater.

2. Adult Bookstore/Adult Video Store An establishment which sells or offers adult material for sale or rent for commercial gain; unless the establishment demonstrates either (1) the adult material is accessible only by employees and the gross income from the sale or rental of adult ma-

terial comprises less than forty percent (40%) of the gross income from the sale or rental of goods or services at the establishment, or (2) the individual items of adult material offered for sale or rental comprise less than ten percent (10%) of the individual items, as stock in trade, publicly displayed in the establishment and which is not accessible to minors at the establishment.

3. Adult Booth  A small enclosed or partitioned area inside an adult entertainment establishment which is: (1) designed or used for the viewing of adult material by one or more persons and (2) is accessible to any person, regardless of whether a fee is charged for access.  The term "adult booth" includes, but is not limited to, a "peep show" booth, or other booth used to view "adult material."  The term "adult booth" does not include a foyer through which any person can enter or exit the establishment, or a restroom.

4. Adult Dancing Establishment  An establishment where employees display or expose specified anatomical areas to others, regardless of whether the employees actually engage in dancing.

5. Adult Entertainment Establishment
a.  Any adult arcade, adult theater, adult bookstore/adult video store, adult motel or adult dancing establishment; or any other establishment or business operated for commercial gain where any employee, operator or owner exposes his/her specified anatomical area for viewing by patrons, including but not limited to: massage establishments, whether or not licensed pursuant to Chapter 480, Florida Statutes, tanning salons, modeling studios, or lingerie studios.
b.  Excluded from this definition are any educational institutions where the exposure of specified anatomical areas is associated with a curriculum or program.

c.  An establishment that possesses an Adult Entertainment License is presumed to be an Adult Entertainment Establishment.

6. Adult Material  Any one or more of the following, regardless of whether it is new or used:
a.  Books, magazines, periodicals or other printed matter, photographs, films, motion pictures, video cassettes, slides, or other visual representations; recordings, other audio matter; and novelties or devices which have as their primary or dominant theme subject matter depicting, exhibiting, illustrating, describing or relating to specified sexual activities or specified anatomical areas;  or
b.  Instruments, novelties, devices or paraphernalia which are designed for use in connection with specified sexual activities.

7. Adult Motel  Any hotel, motel, boarding house, rooming house or other place of temporary lodging which includes the word "adult" in any name it uses or otherwise advertises the presentation of adult material.  The term "adult motel" is included within the definition of "adult theater."

8. Adult Theater  An establishment operated for commercial gain which consists of an enclosed building, or a portion or part thereof, or an open-air area used for viewing of adult material.  "Adult motels", "adult arcade", "adult booth" and "adult motion picture theater" are included within the definition of "adult theater."  An establishment which has "adult booths" is considered to be an "adult theater."

9. Adult Video Store—see "Adult Bookstore".

10. Alcoholic Beverage  A beverage containing more than one percent (1%) of alcohol by weight, including but not limited to beer and wine.
a.  It shall be prima-facie evidence that a beverage is an alcoholic beverage if proof exists:

(1) the beverage in question was or is known as whiskey, moonshine whiskey, shine, rum, gin, tequila, vodka, scotch, scotch whiskey, brandy, beer, malt liquor, or by any other similar name or names; or

(2) the beverage was contained in a bottle or can labeled as any of the above names, or a name similar thereto, and the bottle or can bears the manufacturer's insignia, name, or trademark.

b. Any person who, by experience in the handling of alcoholic beverages, or who by taste, smell, or drinking of such alcoholic beverages has knowledge of the alcoholic nature thereof, may testify as to his opinion about whether such beverage is an alcoholic beverage.

11. Board  The Board of County Commissioners of Palm Beach County, Florida.

12. Code  The Adult Entertainment Code.

13. Commercial gain  Operated for pecuniary gain which shall be presumed for any establishment which has received an occupational license. For the purpose of this Code, operation for commercial or pecuniary gain shall not depend on actual profit or loss.

14. Commercial Establishment  Any business, location, or place which conducts or allows to be conducted on its premises any activity for commercial gain.

15. Conviction  A determination of guilt resulting from plea or trial, regardless of whether adjudication was withheld or whether imposition of sentence was suspended.

16. Department  The Fire Department, Health Department, Occupational License Department, Sheriff, or the Zoning & Building Divisions of the Planning, Zoning & Building Department including the respective directors, employees, and agents thereof.

17. Educational Institution  A premises or site upon which there is an institution of learning, whether public or private, which conducts regular classes and/or courses of study required for accreditation by or membership in the State Department of Education of Florida, Southern Association of Colleges and Secondary Schools, or the Florida Council of Independent Schools.  The term "educational institution" includes a premises or site upon which there is a day care center, nursery school, kindergarten, elementary school, junior high school, senior high school; professional institution or an institution of higher education including a community college, junior college, or four year college or university;  libraries, art galleries and museums open to the public; or any special institution of learning. However, the term "educational institution" does not include a premises or site upon which there is a vocational institution operated for commercial gain.

18. Employee  Any person who works or performs in an adult entertainment establishment, irrespective of whether said person is paid a salary or wage by the owner or manager of the premises.  Employer shall include any person who pays any form of consideration to an owner or manager of an establishment for the privilege to work, perform or expose his/her specified anatomical areas within the establishment.

19. Establishment  The site or premises on which the Adult Entertainment Establishment is located, including the interior of the establishment, or portion thereof, upon which certain activities or operations are being conducted for commercial gain.

20. Inspector  A respective employee of the Palm Beach County Sheriff's Department, Palm Beach County Public Health Unit, Palm Beach County Planning, Zoning & Building Department, Palm Beach County

Occupational Licensing Department or officers of Palm Beach County Fire Rescue Department, who are authorized pursuant to this Code to inspect licensed premises.

21. <u>Licensed Premises</u>—see "Establishment".

22. <u>Licensee</u>  Any person whose application for an adult entertainment establishment has been granted and who totally or partially owns, operates or controls the establishment.

23. <u>Operator</u>  Any person who engages or participates in any activity which is necessary to or which facilitates the operation of an adult entertainment establishment, including but not limited to the licensee, manager, owner, doorman, bouncer, bartender, dancer, disc jockey, sales clerk, ticket taker, movie projectionist, or supervisor.

24. <u>Person</u> includes, but is not limited to, an individual(s), firm(s), association(s), joint venture(s), partnership(s), estate(s), trust(s), business trust(s), syndicate(s), fiduciarie(s), corporation(s), and all other or any other similar entity.

25. <u>Principal Stockholder</u>  Any person, as defined in Subsection (23) above, who owns or controls, legally or beneficially, ten percent (10%) or more of a corporation's capitol stock, and includes the officers and directors.  If no stockholder of a corporation owns or controls, legally or beneficially, at least ten percent (10%) of the capitol stock, all stockholders shall be considered principal stockholders.  And, if a corporation is registered with the Securities and Exchange Commission, or pursuant to Chapter 517, Florida Statutes (1987), and its stock is for sale to the general public, it shall not be considered to have any principal stockholders.

26. <u>Private performance</u>  The display or exposure of any specified anatomical area by an employee at an Adult Entertainment Establishment to a person other than another employee while the person is in an area within the establishment not accessible during such display to all other persons in the establishment, or while the person is in an area in which the person is totally or partially screened or partitioned during such display from the view of all persons within the establishment.

27. <u>Specified anatomical areas</u> means:
a.  less than completely and opaquely covered:

(1) human genitals and pubic region; or

(2) cleavage of the human buttocks; or

(3) that portion of the human female breast encompassed within an area falling below the horizontal line one would have to draw to intersect a point immediately above the top of the areola.  This definition shall include the entire lower portion of the female breast, but shall not include any portion of the cleavage of the human female breast exhibited by a dress, blouse, shirt, leotard, bathing suit, or other wearing apparel, provided the areola is not so exposed;  or

b.  human male genitals in a discernibly turgid state, even if completely and opaquely covered.

28. <u>Specified criminal act</u> means:
a.  A criminal violation of this Code; or,

b.  Any felony; or,

c.  An offense under Chapter 794, Florida Statutes (Sexual Battery); or,

d.  An offense under Chapter 796, Florida Statutes (Prostitution); or,

e.  An offense under Chapter 800, Florida Statutes (Lewdness; Indecent Exposure); or,

f.  An offense under Chapter 826, Florida Statutes (Bigamy; Incest); or,

g.  An offense under Chapter 847, Florida Statutes (Obscene Literature; Profanity);  or,

h. An offense under Chapter 831, Florida Statutes (Forgery; Counterfeiting); or,

i. Offense under Chapter 837, Florida Statutes (Perjury); or,

j. An offense under Chapter 843, Florida Statutes (Obstructing Justice); or,

k. An offense under Chapter 849, Florida Statutes (Gambling); or,

l. An offense under Chapter 893, Florida Statutes (Drug Abuse Prevention and Control); or,

m. An offense under Chapter 895, Florida Statutes (Racketeering; Illegal Debts); or,

n. An offense under Chapter 896, Florida Statutes (Offenses Related to Financial Transactions); or,

o. An offense under an analogous statute of a state other than Florida, or under an analogous ordinance of another county or city.

29. Specified Criminal Offense means:

a. a conviction under § 60.05, Florida Statutes (Nuisance Abatement); or,

b. a conviction under § 480.043, § 480.046, § 480.047, § 480.048 or § 480.049 (Florida Statutes), or subsequent regulation; or,

c. a conviction under Chapter 561 (Beverage Law; Administration) or Chapter 562 (Beverage; Enforcement), Florida Statutes; or,

d. a judgment against or conviction under Chapter 823 (Public Nuisances), Florida Statutes.

30. Specified sexual activities means:

a. human genitals in a state of sexual stimulation, arousal or tumescence; or,

b. acts of human analingus, bestiality, buggery, cunnilingus, coprophagy, coprophilia, fellation, flagellation, masochism, masturbation, necrophilia, pederasty, pedophilia, sadism, sadomasochism, sexual intercourse, or sodomy; or

c. fondling or other erotic touching of human genitals, pubic region, buttock, anus, or female breast; or

d. excretory functions as part of or in connection with any of the activities set forth in subsections (a) through (b).

31. Lap Dance also known as a "straddle dance", "face dance", or "flash dance" means the use by an employee, whether clothed or partially or totally nude, of any part of his or her body to touch, massage, rub, stroke, caress, or fondle the genital or pubic area of a person while at the establishment, or the touching of the genital or pubic area of any employee by a person while at the establishment. It shall be a "lap dance" regardless of whether the "touch" or "touching" occurs while the employee is displaying or exposing any specified anatomical area. It shall also be a "lap dance" regardless of whether the "touch" or "touching" is direct or through a medium.

H. Regulation of Obscenity Subject to State Law. It is not the intent of the Board to legislate with respect to matters of obscenity. These matters are regulated and preempted by state law.

I. Regulation of Massage Establishments Subject to State Law. It is not the intent of the Board to legislate, limit or conflict with respect to matters of massage establishments which are regulated by state agency, the Department of Professional Regulation, Board of Massage, and by state law, Chapter 480, Florida Statutes.

J. Land Development Code Approval. No application for a license as provided in Part II of this Ordinance, shall be approved until the appropriate provisions of the Palm Beach County Zoning Code or similar Municipal Zoning Ordinance have been complied with, the required zoning approval obtained and the respective Zoning Official officially notifies the Occupational Licensing Department of compliance.

K. Penalty. In Part III(B)(C) and IV of this Ordinance where no specific penalties are provided and (1) any act is prohibited, or is made or declared to be

unlawful, or an offense, or (2) whenever in this Ordinance the doing of any act is required or the failure to do any act is declared to be unlawful, the violation of any such provision of this Ordinance shall be punished as provided in Section 125.69, Florida Statutes, or its successor. Each day any violation of any provision of this Ordinance shall continue, shall constitute a separate offense, unless otherwise provided.

## II. LICENSING PROVISIONS

A. Adult Entertainment License.

1. No adult entertainment establishment shall be permitted to operate without first having been issued an Adult Entertainment License by the Occupational Licensing Department pursuant to this Code.

2. Adult Entertainment Licenses referred to in this Code shall be licenses limited to the following classifications:

   a. Adult bookstore/Adult video store; or

   b. Adult theater (Adult arcade, adult booth and adult motel are considered an adult theater); or

   c. Adult dancing establishment.

3. An Adult Entertainment License for a particular Adult Entertainment Establishment shall be limited to one classification of license.

4. An Adult Entertainment Establishment may hold more than one classification of Adult Entertainment License.

B. Administration. The ultimate responsibility for the administration of this Code is vested in the Board. Several departments have been delegated responsibility pursuant to the provisions outlined in this Code:

1. When formally notified by the departments in (B)(2–6), below, that the requirements of this Code have been met or violated, the Palm Beach County Occupational Licensing Department shall issue all licenses herein, and grant, deny, revoke, renew, suspend and cancel Adult Entertainment Licenses for proposed or existing Adult Entertainment Establishments in both incorporated and unincorporated areas of Palm Beach County.

2. The Sheriff of Palm Beach County is responsible for verifying information contained on an application for an Adult Entertainment License, and for inspecting any proposed, licensed or non-licensed Establishment in Palm Beach County in order to ascertain whether it is in compliance with applicable criminal statutes and ordinances, and for enforcing applicable criminal statutes and ordinances including those set forth at PART II, III & IV of this Code.

3. The Palm Beach County Public Health Unit is responsible for the periodic inspections of licensed premises and any proposed Establishment in order to ascertain whether it complies with or is complying with PART III of this Code and all applicable health codes, statutes, ordinances, and regulations in effect in Palm Beach County.

4. The Building Division of the Planning, Zoning & Building Department in the unincorporated area of the County is responsible for inspecting any proposed Establishment for which a license is being applied for in order to ascertain whether it complies with or is complying with PART III of this Code and all applicable building codes, statutes, ordinances, and regulations in effect in Palm Beach County, Florida. The respective Building Official shall compare and certify that all aspects of the submitted floor plan, site plan and certified survey accurately depict the actual structure, and comply with the provisions of this Code.

5. Palm Beach County Fire Rescue Department in the unincorporated area of the County is responsible for the

inspection of licensed premises or any proposed Establishment to ascertain whether it complies with or is complying with PART III of this Code and all applicable fire codes, statutes, ordinances, and regulations in effect in Palm Beach County.

6. The Zoning Division of the Planning, Zoning & Building Department in the unincorporated area of the County is responsible for ascertaining whether a proposed Establishment for which a license is being applied for complies with Part I(J), the applicable portions of PART III of this Code and all applicable zoning regulations in effect in Palm Beach County, and whether a licensed establishment is complying with PART I(J) and Part III of this Code and all applicable zoning regulations and land use laws in effect in Palm Beach County.

7. In those incorporated areas which opt to regulate pursuant to this Ordinance the City Manager/Administrator shall provide to the Occupational Licensing Department the designation of Municipal Departments and contact persons for the municipality who have been delegated the responsibilities outlined, paragraphs 4 through 6, above in the provisions of this Code.

C. Application.

1. Filing. Any person desiring to operate an Adult Entertainment Establishment shall file with the Occupational Licensing Department a sworn license application on a standard application form supplied by the Occupational Licensing Department.

2. Contents. The application shall contain the following information and shall be accompanied by the following documents:

a. if the application is:

(1) an individual—his legal name, any aliases, and date of birth;

(2) a partnership—the full and complete name of the partnership, and the legal names of all partners, dates of birth, and all aliases used by all of the partners, whether the partnership is general or limited, and, if in existence, a copy of the partnership agreement; or

(3) a corporation—the exact and complete corporate name, the date of its incorporation, evidence that the corporation is in good standing, the legal names and dates of birth, and all aliases used, the capacity of all officers, directors and principal stockholders, and, if applicable, the name of the registered corporate agent and the address of the registered office for service of process; and

b. the application shall list the current local and legal domiciliary residential address of the principal stockholders of the corporation. For purposes of this subsection, principal stockholders are persons and not corporate or other legal entities. When the principal stockholder is a corporate or other legal entity, the application must trace back the ownership through any layers of corporate organization to the eventual principal stockholder who is a person.

c. if the applicant intends to conduct the establishment under a name other than that of the applicant, the applicant shall state the establishment's fictitious name and the county of registration under Section 865.09, Florida Statutes (1985), all legal names, dates of birth, and all aliases used by all interested persons; and

d. whether preceding the date of the application, the applicant or any of the other individuals listed pursuant to subparagraph (a) above, have ever been convicted of a specified criminal act and, if so, the specified criminal act involved, the date of conviction and the place of conviction; and

e. whether the applicant or any of the other individuals listed pursuant to subparagraph (a) above, has (1) had a previous license under this Code suspended or revoked, as well as the date of the suspension or revocation, and (2) whether the applicant has been a part-

ner in a partnership or an officer, director or principal stockholder of a corporation whose license under this Code has previously been suspended or revoked, including the name and location of the establishment for which the license was suspended or revoked, as well as the date of the suspension or revocation; and

f. whether the applicant or any other individuals listed pursuant to subparagraph (a) above holds any other licenses under this Code and, if so, the names and locations of such other licensed establishments; and

g. the single classification of license for which the applicant is filing; and

h. the location of the proposed establishment, including a legal description of the property site, and a legal street address; and

i. the names of all employees, dates of birth and aliases used for the proposed establishment, if known, or, if presently unknown a statement to that effect; and

j. the applicant's mailing address; and

k. a site plan and certified survey drawn to appropriate scale of the proposed establishment indicating but not limited to all property lines, rights-of-way, and the location of buildings, parking areas and spaces, curb cuts, and driveways and shall state and indicate on the survey that the distance and locational requirement of Section 500.31 of the Zoning Code have been satisfied; and

l. a floor plan drawn to appropriate scale of the proposed establishment indicating, but not limited to:

(1) all windows, all doors, all entrances and exits; and

(2) all fixed structural interior features, including but not limited to doors, walls, stages, partitions, projection booths, admission booths, adult booths, concession booths, stands, counters and similar structures; and

(3) all proposed improvements or enlargements to be made, which shall be indicated and calculated in terms of percentage of increase in floor size; and

m. the petition number of the adopted zoning resolution approving the use, or the circumstances in support of a claim the use has a valid non-conforming status; and

n. list the name and phone number of the person for the Building Division to contact to schedule the inspection; and

o. list the phone number of the existing or proposed establishment.

3. Copies.

a. In addition to the requirement of Section (2) above, the applicant shall supply a minimum of six (6) copies of the application, or more as may be required, to the Occupational Licensing Department.

b. An application shall not be considered complete until the application satisfies the requirements of Section (2), and Paragraph 3(a), above.

4. Application Fee. Each application shall be accompanied by a non-refundable fee of Five–Hundred Dollars ($500.00) to defray the costs of processing and investigating of the application. If the application for a license is approved and a license is granted, one-half (½) of the application fee shall be applied as a credit towards the annual license fee required for the first year pursuant to Part II(G)(6) of this Code.

5. Rejection of Application. In the event the Occupational Licensing Department or one of the departments listed in Part II(B) above, determines, learns or is notified at any time that the applicant has not satisfied the application requirements for a proposed establishment, the applicant shall be promptly notified of such fact with a detailed list of reasons and the application shall be automatically denied.

D.  Investigation of Application.

1.  Upon receipt of an application properly filed with the Occupational Licensing Department and upon payment of the nonrefundable application fee, the Occupational Licensing Department shall send the attached photocopies of the application to the Sheriff, Fire Rescue, Palm Beach County Health Unit, and the Building and Zoning Divisions of the Planning, Zoning & Building Department. Each department shall promptly conduct an investigation of the applicant, application and the proposed establishment in accordance with its responsibilities outlined in Part III. At the conclusion of its investigation, each department shall indicate on the photocopy of the application whether the application satisfies each requirement of this Code, date it, and sign it.

2.  A Department shall deny an application if it finds that the proposed establishment will be in violation of any provision of PART III of this Code, or of any building, fire, health, or zoning statute, code, ordinance, or regulation. If the application fails to satisfy this Code or any other Code, the Department shall specifically state its reasons on a separate letter attached to the photocopy of the application.

E.  Review.

1.  The Departments shall conduct and complete an investigation of the application within 30 days from receipt of the application (day thirty). If a provision of this Code, including general Building, Fire, or Health Codes are found to be in violation, the respective department shall immediately notify the Occupational Licensing Department of the violation by marking the application as rejected, state the reasons and offer suggestions for correction.

Upon receipt of the rejected application, the Occupational Licensing Department shall wait until day thirty for the review from the other departments. Then, the Occupational Licensing Department shall notify the applicant of the denial. All communications regarding approval or denial shall be issued by and through the Occupational Licensing Department. Any statements issued directly or independently by the review departments shall not be deemed to create a reliance or estoppel situation as to the provisions of this Code.

2.  The Occupational Licensing Department shall issue or deny an application for an Adult Entertainment License within sixty (60) days from the date of the acceptance of a complete application. Upon the expiration of the sixty (60) day period the applicant may demand a license and begin operating the establishment for which a license is sought, unless and until the Occupational Licensing Department notifies the applicant of a denial of the license application and states the reasons for the denial.

The date of the proper filing of the application shall be the date the applicant furnishes the fully completed application and the required number of copies.

3.  If the application has satisfied the requirements of this Code, the Occupational Licensing Department shall notify the applicant and issue the license to the applicant upon payment of the appropriate annual license fee provided in Part II(G)(6), with credit as provided in Part II(C)(3).

4.  The Occupational Licensing Department shall deny the application if one of the departments:

a.  finds the application violates or fails to meet the provisions of this Code;

b.  states the application contains material false information;

c.  states the applicant or any of the other individuals listed pursuant to Part II(J) has a license under this Code which has been suspended or revoked; or

d. states the granting of the application would violate a statute or ordinance, or an order from a Court of law which effectively prohibits the applicant from obtaining an Adult Entertainment License.

5. If the application is denied, the Occupational Licensing Department shall notify the applicant with the reason(s) stated for the denial. Notification shall be sent certified U.S. Mail, return receipt requested, to the address provided on the license application which shall be considered the correct address. Each applicant has the burden to furnish any changed address to the Occupational Licensing Department, by U.S. Certified Mail return receipt requested.

F. Establishment Existing on Effective Date.

1. Operators of Adult Entertainment Establishments existing and operating on the effective date of this Ordinance shall make an application for License hereunder, complete with all required information and the required number of copies, within sixty (60) days of said effective date. After completion of the application, said establishment shall be permitted to operate until October 1, 1989 pending issuance of the license or until the application for license is denied, whichever comes first.

2. Notwithstanding Subsection (F)(1) above, every Adult Theater in existence at the effective date of this Ordinance shall comply with the Structure Requirements in Part III(C)(1) below, prior to February 4, 1989.

3. Notwithstanding Subsection (F)(1) above, every Adult Dancing Establishment in existence at the effective date of this Ordinance shall comply with the Structure Requirements in Part III(C)(2) below, prior to July 3, 1989.

4. Every existing Adult Entertainment Establishment must satisfy all requirements of this Code prior to the issuance of the license, particularly the general requirements of Part III(A) and the structural requirements of Part III(C).

5. If an application for license is denied, the operation of an existing Adult Entertainment Establishment shall cease within ten (10) business days of receipt of notice. Operation without a valid license is subject to the provisions of Part IV(A) of this Code.

6. If an operator of an existing and operating Adult Entertainment Establishment at the effective date of this Ordinance fails to receive an Adult Entertainment License pursuant to this Code by October 1, 1989, operation of said establishment shall cease. Operation without a license after October 1, 1989, is subject to the provisions of Part IV(A) of this Code.

7. Pursuant to Part I(J) every existing Adult Entertainment Establishment shall present proof of a special exception or of its legal non-conforming zoning status to the Zoning Division or respective municipality prior to issuance of the license.

8. Except for the above provisions, all the provisions of this Part and Ordinance shall apply to such licensees.

G. License.

1. Contents. An Adult Entertainment License shall state on its face the name of the Licensee the business, local residential and legal domiciliary residential address of the Licensee, the name of the establishment, the street address of the establishment, the classification(s) of the License, the date of application, the application number, the date of License issuance, and the date of License expiration.

2. Term. All Licenses issued under this Code shall be annual Licenses which shall commence running on October 1, on which date they shall have been paid for, and shall expire on September 30 of the following year. If a License is issued after October 1, but

by March 31, of the following year, the applicant shall pay the prorated License fee. If a License is issued after March 31, but by October 1 of the same year, the applicant shall pay one-half the appropriate License fee.

3. Renewal. Licenses shall be entitled to renewal annually subject to the provisions of this Code. Prior to the October 1 expiration date, the annual License may be renewed by presenting the License for the previous year and by paying the appropriate License fee.

4. Expiration. A License shall expire for failure to obtain in hand a renewal pursuant to this Code by October 1. An expired license may be renewed by November 30 of the same year upon: (i) presentment of an affidavit stating that the establishment has not been operated as an Adult Entertainment Establishment subsequent to expiration; (ii) the payment of the appropriate License fee; and (iii) payment of a penalty of ten percent (10%) of the appropriate License fee for the month of October and if renewed after October 31, an additional penalty of five percent (5%) of the appropriate License fee for the month of November, and each successive month.

5. Cancellation. All expired Licenses not renewed by November 30 and each succeeding month shall be cancelled summarily by the Occupational Licensing Department, unless such License is involved in litigation.

6. Annual License Fees. The following are the annual License fees under this Code for an Adult Entertainment Establishment:

a. an Establishment having a License for an Adult Bookstore/Adult Video Store—eight hundred dollars ($800.00).

b. an Establishment having a License for an Adult Theater, as follows:

(1) having Adult Booths—forty dollars ($40.00) for each booth; or

(2) having a hall or auditorium—five dollars ($5.00) for each seat; or

(3) having an area outdoors designed to permit viewing by customers seated in vehicles—five dollars ($5.00) for each parking space.

c. Adult Motel—eight hundred dollars ($800.00).

d. an Establishment having a License for an Adult Dancing Establishment—two-thousand dollars ($2,000.00).

e. having a combination of (a), (b)(1), (b)(2), (b)(3), (c) and/or (d)—the cumulative license fee applicable to each under (a), (b)(1), (b)(2), (b)(3), (c) and (d).

f. The annual License fees collected under this Code are declared to be regulatory fees which are collected for the purpose of examination and periodic inspection of Adult Entertainment Establishments pursuant to this Code and the administration thereof. These regulatory fees are in addition to and not in lieu of the Occupational License taxes imposed by other sections of the County Code of Palm Beach County, Florida.

g. The fees shall be based upon the information contained in the License application, subject to verification, by inspection, by the Building Division and Sheriff.

h. The fee schedule contained in (6)(a–d) may be revised pursuant to resolution adopted by the Board when necessary to insure the fees covers the costs of administering and enforcing this Ordinance.

7. Distribution of Fees.

a. The Occupational Licensing Department shall be responsible for the collection of the application and annual License fees pursuant to this Code.

b. The distribution of the application fees to the various departments to defray costs of the implementation of this ordinance shall be made pursuant to resolution adopted by the Board. The distribution may be revised by resolution when necessary to insure the distribution of fees covers the costs of

the respective departments for the application procedures.

c. The distribution of the annual License fees shall be made pursuant to resolution adopted by the Board. The distribution may be revised by resolution when necessary to insure the distribution of fees covers the costs of the respective departments for the implementation, enforcement and compliance review of the regulations of this Code.

H. Transfer of License.

1. A Licensee shall not transfer his License to another person, or thereby surrender possession, control, and operation of the licensed establishment to such other person.

2. A Licensee shall not transfer his License to another location.

3. Any attempted transfer of a License either directly or indirectly in violation of this Section is hereby declared void, and the License shall be deemed abandoned and the License shall be forfeited and revert to the Occupational Licensing Department.

I. Changed Name. No Licensee may change the name of an Adult Entertainment Establishment unless and until he satisfies each of the following requirements:

1. gives the Occupational Licensing Department thirty (30) days notice in writing of the proposed name change;

2. pays the Occupational Licensing Department a twenty-five dollar ($25.00) change-of-name fee; and

3. complies with Section 865.09, Florida Statutes (1987).

J. Enforcement.

1. Suspension.

a. Violation of Regulations. In the event a Licensed Adult Entertainment Establishment is operating in violation of a building, fire, health, or zoning statute, code, ordinance or regulation, whether federal, state, or local, or the respective general requirements of Part III(A), the appropriate citing department shall promptly notify the Occupational Licensing Department who shall notify the Licensee of the violation and shall allow the Licensee a ten (10) business day period in which to correct that violation. If the Licensee fails to correct the violation within the ten (10) business day period, the citing Department shall notify the Occupational Licensing Department, who shall forthwith suspend the License and shall notify the Licensee of the suspension. The suspension shall remain in effect until the citing Department notifies the Occupational Licensing Department in writing that the violation of the provision in question has been corrected.

b. Illegal Transfer. In the event the Occupational Licensing Department or other Departments are notified, learn or find that a Licensee engaged in a license transfer contrary to Part II(H), the Occupational Licensing Department shall forthwith suspend the License, and notify the Licensee of the suspension. The suspension shall remain in effect until all of the requirements of Part II have been satisfied and a new License is issued by the Occupational Licensing Department.

c. Violations of Part III & IV of this Code.

(1) In the event of two (2) or more convictions for violations of any of the rules and regulations within Part III & IV of this Code within a two (2) year period, the Occupational Licensing Department shall, upon notification of the date of the second conviction, suspend the License and notify the Licensee of the suspension. The suspension shall remain in effect for a period of sixty (60) days.

(2) In the event of one (1) or more convictions for violations of any of the rules and regulations of Part III & IV of this Code occurs within a period two (2) years from the date of the violation from which the conviction resulted for which the License was suspended for sixty (60) days under subsection (c)(1)

above, the Occupational Licensing Department shall, upon notification of the date of the first conviction, suspend the License again and notify the Licensee of the suspension. The time during which the License was suspended for sixty (60) days shall not be included within the two (2) year period. The suspension shall remain in effect for a period of ninety (90) days.

(3) In the event of one (1) or more convictions for violations of any rule or regulation of Part III & IV of this Code occurs within a period of two (2) years from the date of the violation from which the conviction resulted for which the License was suspended for ninety (90) days under subsection (c)(2), the Occupational Licensing Department shall, upon notification of the date of the first conviction, suspend the License again and notify the Licensee of the suspension. The time during which the License was suspended for ninety (90) days shall not be included within the two (2) year period. The suspension shall remain in effect for a period of one hundred eighty (180) days.

(4) The renewal of or new application for a License pursuant to this Code shall not defeat the terms of Part II(J).

d. Effect of Suspension. If a License is suspended, all operations within the Adult Entertainment Establishment shall cease for the period of the suspension, the Occupational License shall be suspended for the suspension period. The Department of Beverage shall be notified of the suspension and no other person shall be allowed to operate an Adult Entertainment Establishment at that location.

e. Effective Date of Suspension. All periods of suspension shall begin fifteen (15) days, including Saturdays, Sundays and holidays, after the date the Occupational Licensing Department mails the notice of suspension to the Licensee or on the date the Licen-

see surrenders its License to the Occupational Licensing Department, whichever occurs first.

2. Revocation.

a. False Information. In the event it is learned or found, or upon sufficient cause that a License was granted based upon false information, misrepresentation of fact, or mistake of fact by the Licensee or its agent, the respective department which has knowledge of the false information shall notify the Occupational Licensing Department which shall forthwith revoke the License, and notify the Licensee of the revocation.

b. Convictions for Violations of Part III & IV of this Code. In the event of one (1) or more convictions for violations of Part III or IV of this Code occurs within a period of two (2) years from the date of the violation from which the conviction resulted for which the License was suspended for a period of one hundred eighty (180) days pursuant to Part III(J)(1)(c)(3), the Occupational Licensing Department shall forthwith revoke the License and notify the Licensee of the revocation. The time during which the License was suspended for one hundred eighty (180) days shall not be included within the two (2) year period.

c. Effect of Revocation. If a License is revoked, the Licensee shall not be allowed to obtain another Adult Entertainment License for a period of two (2) years, and no License shall be issued during that time period to any other person for the location and premises upon which the Adult Entertainment Establishment was situated.

d. Effective Date. The revocation shall take effect fifteen (15) days, including Saturdays, Sundays and holidays, after the date the Occupational Licensing Department mails the notice of revocation to the Licensee or on the date the Licensee surrenders its License to the Occupational Licensing Department, whichever occurs first.

**K. Records and Reports; Consent.**

1. Each licensee shall keep such records and make such reports as may be required by the Occupational Licensing Department and the Departments to implement this Code and to carry out its purpose.

## III. REGULATORY PROVISIONS

**A. General Requirements.**

1. Each Adult Entertainment Establishment shall, regardless of whether it is licensed, observe the following general requirements:

   a. conform to all applicable building statutes, codes, ordinances, and regulations, whether federal, state or local; and,

   b. conform to all applicable fire statutes, codes, ordinances, and regulations, whether federal, state or local; and,

   c. conform to all applicable health statutes, codes, ordinances, and regulations, whether federal, state or local; and,

   d. conform to all applicable zoning regulations and land use laws, whether state or local, including but not limited to § 500.31, Palm Beach County Zoning Code (locational restrictions); and,

   e. keep the Adult Entertainment License posted in a conspicuous place at the establishment at all times, which license shall be available for inspection upon request at all times by the public; and,

   f. opaquely cover each non-opaque area through which a person outside the establishment may otherwise see inside the establishment; and,

2. This Code, particularly the enforcement provisions, shall not be construed to supersede the other powers and duties of the departments listed in IIB, above. The independent powers of the departments, including but not limited to the Building Division's responsibility to close eminent hazards pursuant to Chapter 7 of the Code of Laws and Ordinances of Palm Beach County or similar municipal duty, shall not be limited by this Code.

**B. Prohibition of Alcoholic Beverages.**

1. Prohibition.

   (a) No person or employee shall expose to public view his or her human genitals, pubic region, or cleavage of the human buttocks or any simulation thereof in any establishment serving alcoholic beverages.

   (b) No person maintaining, owning or operating an establishment serving alcoholic beverages shall suffer or permit any person or employee to expose to public view his or her human genitals, pubic region, or cleavage of the human buttocks or simulation thereof within the establishment serving alcoholic beverages.

   (c) No person maintaining, owning or operating an establishment serving alcoholic beverages shall suffer or permit any human genitals, pubic region, or cleavage of the human buttocks or the simulation thereof within the establishment serving alcoholic beverages.

   (d) No person shall cause and no person maintaining, owning or operating an establishment serving alcoholic beverages shall suffer or permit the exposition of any graphic representation, including pictures or projection of film, which depicts specified anatomical areas, engage in any specified sexual activities or any other sexual act prohibited by law, or any simulation thereof, within any establishment serving alcoholic beverages.

**C. Supplementary Requirements.**

1. Adult Theater. In addition to the general requirements for an Adult Entertainment Establishment contained in Section A & B of Part III above, an Adult Theater shall, regardless of whether it is licensed, observe the following special requirements:

   a. If the Adult Theater contains a hall or auditorium area, the area shall

comply with each of the following provisions:

(1) have individual or separate seats not couches, benches, beds or the like, to accommodate the maximum number of persons who may occupy the area; and,

(2) have a continuous main aisle alongside of the seating areas in order that each person seated in the areas shall be visible from the aisle at all times; and,

(3) have a sign posted in a conspicuous place at or near each entranceway to the hall or auditorium area which lists the maximum number of persons who may occupy the hall or auditorium area, which number shall not exceed the number of seats within the hall or auditorium area.

(4) post an Aids Crisis Sign on the side of the door which opens and allows patrons to enter the theater.

b. If the Adult Theater contains Adult Booths, each Adult Booth shall comply with each of the following provisions:

(1) have a sign posted in a conspicuous place at or near the entranceway which states that only one person may occupy the booth; and

(2) have a permanently open entranceway for each booth not less than two (2) feet eight (8) inches wide and not less than seven (7) feet high, which will never be closed or partially closed by any curtain, door, or other partition which would be capable of wholly or partially obscuring any person situated in the booth. No curtains, doors or other partitions shall be affixed, attached or connected to the permanently open entrance way of any booth; and

(3) have one individual seat, not a couch, bench or the like; and

(4) have a continuous main aisle alongside the booth in order that each person situated in the booth shall be visible from the aisle at all times; and

(5) have, except for the open entranceway for each for each booth walls or partitions of solid construction without any holes or openings in such walls or partitions.

(6) post an Aids Crisis Sign at the open entranceway to the adult booths.

(7) provide and display to the public, at a place near the main entrance of the establishment, any information, brochures, or pamphlets supplied by the Palm Beach County Public Health Unit, that deal with AIDS or communicable diseases.

c. If the Adult Theater is designed to permit outdoor viewing by a person(s) seated in automobiles, it shall have the motion picture screen so situated and the perimeter of the establishment so fenced or screened, that the adult material to be seen by those persons may not be seen from any public right-of-way or from surrounding properties.

2. Adult Dancing Establishment. In addition to the general requirements for an Adult Entertainment Establishment contained in Section A & B of Part III above, an Adult Dancing Establishment shall, regardless of whether it is licensed, observe the following special requirements:

a. it shall have a stage provided for the display or exposure of human genitals, pubic region or cleavage of the human buttocks by any employee to a person other than another employee consisting of a permanent platform (or other similar permanent structure) raised a minimum of eighteen (18) inches above the surrounding floor and encompassing an area of at least one hundred (100) square feet; and,

b. any area in which a private performance occurs shall:

(1) have a permanently open entranceway not less than seven (7) feet wide and not less than seven (7) feet high, which entranceway will never be closed or partially closed by any curtain, door, or other partition which would be capable of wholly or partially

obscuring any person situated in the area; and,

(2) have a wall to wall, floor to ceiling partition of solid construction without any holes or openings which partition may be completely or partially transparent and which partition separates the employee from the person viewing the display; and,

(3) have, except for the entranceway, walls or partitions of solid construction without any holes or openings in such walls or partitions.

c. In Adult Entertainment Establishments which do not sell, serve or allow the consumption of alcoholic beverages, the exposure by any employee of human genitals, pubic region or cleavage of the human buttocks, or any simulation thereof to public view shall be restricted to the stage required in (a) above. Non-employees or patrons shall not be permitted closer than four (4) feet to the stage edge when any employees expose those anatomical areas listed in this subsection.

## IV. CRIMINAL PROVISIONS

A. Operation of Establishment Without Valid Adult Entertainment License. It shall be unlawful for any person to operate, or participate in the operation of an Adult Entertainment Establishment when the person knows or should know:

1. that the establishment does not have an Adult Entertainment License for the applicable classification, except as stated in Part II(F); or,

2. the application for a License pursuant to Part II(F) has been denied or was not issued prior to October 1, 1989; or,

3. that the establishment has a License which is under suspension; or,

4. that the establishment has a License which has been revoked or cancelled; or,

5. that the establishment has a License which has expired.

B. Violations of the Regulations in this Code.

1. It shall be unlawful for any person to be an operator of an Adult Entertainment Establishment which does not satisfy all of the general requirements of Part III of this Ordinance.

2. It shall be unlawful for any person to be an operator of an Adult Theater which does not satisfy all of the special requirements of Part III(C).

3. It shall be unlawful for any person to be an operator of an Adult Dancing Establishment which does not satisfy all of the special requirements of Part III(C).

C. Allowing Employee to Engage in Prohibited Acts. It shall be unlawful for an operator of an Adult Entertainment Establishment, regardless of whether it is licensed under this Code, to knowingly or with reason to know, permit, suffer, or allow any employee:

1. to engage in a lap dance with a person at the establishment; or,

2. to contract or otherwise agree with a person to engage in a lap dance with a person at the establishment; or,

3. contract or otherwise agree with a person to engage in any specified sexual activity at the establishment; or,

4. to display or expose any specified anatomical area while simulating any specified sexual activity with any other person at the establishment, including with another employee; or,

5. to allow any person, excluding another employee, to touch any portion of the clothed or unclothed body of the employee below the neck and above the knee, excluding that part of the employee's arm below the wrist, commonly referred to as the hand.

6. to engage in a private performance unless such employee is in an area which complies with the special requirements of Part III; or,

7. to intentionally touch the clothed or unclothed body of any person at the Adult Entertainment Establishment,

excluding another employee, at any point below the neck and above the knee of the person excluding that part of the person's arm below the wrist, commonly referred to as the hand; or,

D. <u>Advertising Prohibited Activity.</u> It shall be unlawful for an operator of an Adult Entertainment Establishment, regardless of whether it is licensed under this Code, to advertise the presentation of any activity prohibited by any applicable state statute or local ordinance.

E. <u>Specified Criminal Offense.</u> It shall be a violation of this Code when the Licensee or the licensed premises is convicted or is adjudged guilty of a specified criminal offense for activities that occurred at the establishment.

F. <u>Minors Prohibited.</u> It shall be unlawful for an operator of an Adult Entertainment Establishment, regardless of whether it is licensed under this Code, to knowingly, or with reason to know, permit, suffer, or allow:

1. admittance to the establishment of a person under eighteen (18) years of age; or,

2. a person under eighteen (18) years of age to remain at the establishment; or,

3. a person under eighteen (18) years of age to purchase goods or services at the establishment; or

4. a person to work at the establishment as an employee who is under eighteen (18) years of age.

G. <u>Working at Establishment Which Does Not Have Valid Adult Entertainment License.</u> It shall be unlawful for any person to work in an Adult Entertainment Establishment that he or she knows or should know is not licensed under this Code, except under the provisions of Part II(F), or which has a License which is under suspension, has been revoked or cancelled, or has expired.

H. <u>Engaging in Prohibited Activity.</u> It shall be unlawful for any employee of an Adult Entertainment Establishment, regardless of whether it is licensed under this Code:

1. to engage in a lap dance with a person at the establishment; or,

2. to contract or otherwise agree with a person to engage in a lap dance with a person at the establishment; or,

3. to engage in any specified sexual activity at the establishment; or,

4. to to display or expose at the establishment less than completely and opaquely covered any specified anatomical area unless such employee is continuously positioned away from any person other than another employee, and unless such employee is in an area as described in Part III(B)(2); or,

5. to engage in the display or exposure of any specified anatomical area while simulating any specified sexual activity with any other person at the establishment, including with another employee; or,

6. to engage in a private performance unless such employee is in an area which complies with the special requirements set for in Part III(B)(2); or,

7. to intentionally touch the clothed or unclothed body of any person at the Adult Entertainment Establishment, excluding another employee, at any point below the neck and above the knee of the person excluding that part of the person's arm below the wrist commonly referred to as the hand; or,

8. to allow any person, excluding another employee to touch any portion of the clothed or unclothed body of the employee below the neck and above the knee, excluding that part of the employee's arm below the wrist, commonly referred to as the hand.

I. <u>Touching of Employee by Non–Employee.</u> It shall be unlawful for any person in an adult entertainment establishment, other than another employee, to

intentionally touch the unclothed or clothed body of any employee at any point below the neck and above the knee of the employee excluding that part of the employee's arm below the wrist, commonly referred to as the hand.

J. Exceeding Occupancy Limit of Adult Booth. It shall be unlawful for any person(s) to exceed the occupancy restrictions for an Adult Booth specified in Part III(c)(1).

K. Use of Restrooms or Dressing Rooms.

1. Notwithstanding any provision indicating to the contrary, it shall not be unlawful for any employee of an Adult Entertainment Establishment, regardless of whether it is licensed under this Code, to expose any specified anatomical area during the employee's bona fide use of a restroom, or during the employee's bona fide use of a dressing room which is accessible only and restricted to employees.

2. The restrictions of Part III & IV, including but not limited to Part IV(C)(H)(I), also apply to all restrooms and dressing rooms.

3. Notwithstanding any provision indicating to the contrary, it shall be unlawful for any person to expose any specified anatomical area during that person's bona fide use of a restroom.

L. Hours of Operation.

1. It shall be unlawful for any operator of an Adult Entertainment Establishment to allow such establishment to remain open for business, or to permit any employee to engage in a performance, solicit a performance, make a sale, solicit a sale, provide a service, or solicit a service, between the hours of 2:00 a.m. and 9:00 a.m. of any particular day.

2. It shall be unlawful for any employee of an Adult Entertainment Establishment to engage in a performance, solicit a performance, make a sale, solicit a sale, provide a service, or solicit a service, between the hours of 2:00 a.m. and 9:00 a.m. of any particular day.

3. These hours of operation limitations shall supersede to the extent of conflict the hours of operation contained in Section 3-2 of Palm Beach County Code (Ordinance 75-23).

M. Alteration of License. It shall be unlawful for any person to alter or otherwise change the contents of an Adult Entertainment License without the written permission of the Occupational Licensing Department.

N. False Statement or False Information in Applying for License.

1. It shall be unlawful for any person applying for an Adult Entertainment License to make a false statement which is intended to facilitate the issuance of a License, or to provide false information which is intended to facilitate the issuance of a License.

O. Violations Subject to Criminal Prosecution. Whoever violates any section of Part III(B)(C) and IV (A through N) of this Code may be prosecuted by the County Attorney, Sheriff or State Attorney and punished as provided by Section 125.69, Florida Statutes (1985).

1. Upon conviction for a violation of Part III & IV, the prosecuting officials shall notify the Occupational Licensing Department of the conviction, including the date of the violation.

P. Violations Subject to Civil Prosecution. Whoever violates any section of Part III(A) of this Code may be prosecuted by the County Attorney, Sheriff and/or Code Enforcement Division of Planning, Zoning & Building Department before the Palm Beach County Code Enforcement Board and punished as provided in Ordinance 87-15.

1. Upon conviction for a violation of Part III & IV, the prosecuting officials shall notify the Occupational Licensing Department of the convic-

tion, including the date of the violation.

## V. MISCELLANEOUS PROVISIONS

A. Appeals.

1. Subject to Part II, within thirty (30) days of the mailing of a notice of denial of an application for a License or a notice of suspension or revocation of a License, the aggrieved party may file a notice of appeal with the Circuit Court.

2. In the event the notice of denial of an application for a License was grounded in whole or in part upon failure to comply with or satisfy all applicable zoning regulations, excluding the location distance provisions of § 500.31 of Appendix F of the Code of Laws and Ordinances of Palm Beach County, the aggrieved party shall first file an application with the Zoning Board of Adjustment for a variance within thirty (30) days of the mailing of the notice of denial, receive a public hearing before the Zoning Board of Adjustment and obtain a final decision therefrom within 120 days of the date of application denial. If the Board of Adjustment grants the variance, the aggrieved party shall notify the Occupational Licensing Department of the variance within thirty (30) days of the grant of the variance.

3. Notice. Any notice required under this Code shall be accomplished by sending a written notification by certified mail, returned receipt requested, to the mailing address set forth on the application for the License. This mailing address shall be considered the correct mailing address unless the Occupational Licensing Department or the Department of General Services has been otherwise notified in writing by certified mail, return receipt requested, by the Licensee of the new address. The Licensee shall have the burden of prov-

ing the Occupational Licensing Department received the new address.

4. Immunity from Prosecution. The County or any Department shall be immune from prosecution, civil or criminal, for reasonable, good-faith trespass upon an Adult Entertainment Establishment while acting within the scope of its authority under this Code.

5. Powers of Board. The Board, Sheriff or State Attorney may bring suit in the Circuit Court to restrain, enjoin or otherwise prevent the violation of Part III(A)(B)(C) and Part IV of this Code.

## Section 2. CAPTIONS.

The captions, section headings, and section designations used in this amendment are intended for convenience of usage only. It shall have no affect on the interpretation of the provisions of this Ordinance.

## Section 3. LAWS IN CONFLICT.

All local laws and ordinances applying to Palm Beach County in conflict with any provisions of this Ordinance are hereby superseded to the degree of conflict.

## Section 4. SEVERABILITY.

If any part of this Code, or any application thereof to any person or circumstance is declared to be void, unconstitutional or invalid for any reason, such portion or provision, or the application thereof, shall be severable from this Code. The remaining portions and provisions of this Code, and all applications thereof shall remain in full force and effect. In the event a part or section of this code is declared void, unconstitutional or invalid, the Board declares that that portion or proscribed provision, or application thereof, was not an inducement to the enactment of this Code.

## Section 5. INCLUSION IN CODE.

The provisions of this Ordinance shall become and made a part of the Code of Laws and Ordinances of Palm Beach County, Florida and the various sections may be

retitled, renumbered, or relettered to accomplish this letter.

### Section 6. EFFECTIVE DATE.

The provisions of this Ordinance shall become effective on January 3, 1989.

APPROVED AND ADOPTED by the Board of County Commissioners of Palm Beach County, Florida, on the 15th day of November, 1988.

Board of County Commissioners
Palm Beach County, Florida
By: /s/ [Signature]
      Chair

ATTEST

John B. Dunkle, Clerk

/s/ Judith Crosbie
    Deputy Clerk
APPROVED AS TO FORM AND LEGAL SUFFICIENCY
/s/ [Signature]
    County Attorney

Acknowledgement by the Department of State of the State of Florida, on this, the 21st day of November, 1988.

Acknowledgement received from the Department of the State of Florida, this 28th day of November, 1988, at 11:40 a.m., and filed in the Office of the Clerk of the Board of County Commissioners of Palm Beach County, Florida.

Ordinance No. 89–:RPB:sfb:3/17/89

### ORDINANCE NO. 89–

AN ORDINANCE OF THE BOARD OF COUNTY COMMISSIONERS OF PALM BEACH COUNTY, FLORIDA, AMENDING THE ADULT ENTERTAINMENT CODE; AMENDING AND ADDING TO SECTION I.G. DEFINITIONS; AMENDING SECTION II.B. ADMINISTRATION; AMENDING, DELETING AND ADDING TO SECTION II.C. APPLICATIONS; AMENDING SECTION II.D. INVESTIGATION OF APPLICATIONS; AMENDING AND DELETING PORTIONS OF SECTION II.E. REVIEW; AMENDING AND ADDING TO SECTION II.F. ESTABLISHMENTS EXISTING ON EFFECTIVE DATE; AMENDING AND ADDING TO SECTION II.G. LICENSE; AMENDING SECTION II.H. TRANSFER OF LICENSE; AMENDING, DELETING, AND ADDING TO SECTION II.J. ENFORCEMENT; AMENDING SECTION III.B. PROHIBITION OF ALCOHOLIC BEVERAGES; AMENDING, DELETING, AND ADDING TO SECTION IV.L. HOURS OF OPERATION; PROVIDING FOR SEVERABILITY; PROVIDING FOR AN EFFECTIVE DATE.

WHEREAS, the Board of County Commissioners of Palm Beach County in the exercise of its police powers to protect the public health, safety, peace, and general welfare, and in response to the concerns of the Sheriff of Palm Beach County and numerous residents of Palm Beach County, have adopted the Adult Entertainment Code, Ordinance 88–31.

WHEREAS, Chapter 125 (County Government) of Florida Statutes establishes the right and power of counties to provide for the health, welfare, and safety of existing and future residents by enacting and enforcing regulations on Adult Entertainment Establishments; and

WHEREAS, due to the First Amendment concerns with the regulation of Adult Entertainment, it is advisable to revise certain provisions of Ordinance 88–31 in order to further assure that First Amendment and Equal Protection rights of all citizens are preserved; and

WHEREAS, several scrivener's errors went undetected in Ordinance 88–31; and

WHEREAS, a few provisions of Ordinance 88–31 needed further clarification to more accurately outline the Procedure and Scope of the ordinance.

NOW THEREFORE, be it ordained by the Board of County Commissioners, as follows:

Section 1. The Adult Entertainment Code, Ordinance 88–31, of the Code of Laws and Ordinances of Palm Beach County is hereby amended to read as follows:

ADULT ENTERTAINMENT CODE

## I. GENERAL PROVISIONS

G. Definitions. In the Adult Entertainment Code, unless the context suggests otherwise:

. . . . .

16. Department The Fire Department, Health Department, ~~Occupational License Department,~~ Sheriff, or the Zoning and Building Divisions of the Planning, Zoning & Building Department including the respective directors, employees, and agents thereof.

20. Inspector A respective employee of the Palm Beach County Sheriff's Department, Palm Beach County Public Health Unit, Palm Beach County Planning, Zoning & Building Department, ~~Palm Beach County Occupational Licensing Department~~ or officers of Palm Beach County Fire Rescue Department, who are authorized pursuant to this Code to inspect licensed premises.

32. The Occupational Licensing Department within the Palm Beach County Tax Collector's Office, a separate Constitutional office from the County Commission.

. . . . .

## II. LICENSING PROVISIONS

. . . . .

B. Administration. The ultimate responsibility for the administration of this Code is vested in the Board. Several departments have been delegated responsibility pursuant to the provisions outlined in this Code:

1. ~~When formally notified~~ Upon formal notification by the departments in (B)(2–6), below, that a license shall be issued, granted, denied, renewed, suspended, revoked, or cancelled, as set out in this Code, ~~the requirements of this Code have been met or violated,~~ the Palm Beach County Occupational Licensing Department shall then issue the official notice of the grant, denial, revocation, renewal, suspension, and cancellation of the ~~all licenses herein, and grant, deny, suspend and cancel~~ Adult Entertainment License for ~~the proposed or~~ existing or proposed Adult Entertainment Establishments in both incorporated and unincorporated areas of Palm Beach County.

. . . . .

C. Application.

2. Contents

~~i. the names of all employees, dates of birth and aliases used for the proposed establishment, if known, or, if presently unknown a statement to that effect; and~~

i̶j. the applicant's mailing address; and

j̶k. a site plan and certified survey drawn to appropriate scale of the proposed establishment indicating but not limited to all property lines, rights-of-way, and the location of buildings, parking areas and spaces, curb cuts, and driveways and shall state and indicate on the survey that the distance and locational requirement of Section 500.31 of the Zoning Code have been satisfied; and

k̶l. a floor plan drawn to appropriate scale of the proposed establishment indicating, but not limited to:

(1) all windows, all doors, all entrances and exits; and

(2) all fixed structural interior features, including but not limited to doors, walls, stages, partitions, projection booths, admission booths, adult booths, concession booths, stands, counters and similar structures; and

(3) all proposed improvements or enlargements to be made, which shall be indicated and calculated in terms of percentage of increase in floor size; and

l̶m. the petition number of the adopted zoning resolution approving the use, or the circumstances in support of a claim the use has a valid non-conforming status; and

mn. list the name and phone number of the person for the Building Division to contact to schedule the inspection; and

ne. list the phone number of the existing or proposed establishment.

o. a notarized signed and sworn statement that the information within the application is truthful, independently verifiable and complete.

. . . . .

5. Rejection of Application. In the event the Occupational Licensing Department is notified by or one of the departments listed in Part II(B) (2–6) above, determines, learns or is notified at any time that the applicant has not satisfied the application requirements for a proposed establishment, the applicant shall be promptly notified of such fact within the time specified herein with a detailed list of reasons and the application shall be automatically denied.

D. Investigation of Application.

1. Upon receipt of an application properly filed with the Occupational Licensing Department and upon payment of the nonrefundable application fee, the Occupational Licensing Department shall send the attached photocopies of the application to the Sheriff, Fire Rescue, Palm Beach County Health Unit, and the appropriate Building and Zoning Divisions of the Planning, Zoning & Building Department /Planning Officials. Each department shall promptly conduct an investigation of the applicant, application and the proposed establishment in accordance with its responsibilities outlined in Part III. At the conclusion of its investigation, each department shall indicate on the photocopy of the application whether the application satisfies each requirement of this Code, date it, and sign it.

. . . . .

E. Review.

1. The Departments shall conduct and complete an investigation of the application within 50 30 days from receipt of the application (day fifty thirty). If a provision of this Code, including general Building, Fire, or Health Codes are found to be in violation, the respective department shall immediately notify the Occupational Licensing Department of the violation by marking the application as rejected, state the reasons and offer suggestions for correction.

Upon receipt of the rejected application, the Occupational Licensing Department shall wait until day fifty thirty for the review from the other departments. Then, the Occupational Licensing Department shall notify the applicant of the denial.

All communications regarding approval or denial shall be issued by and through the Occupational Licensing Department. Any statements issued directly or independently by the review departments shall not be deemed to create a reliance or estoppel situation as to the provisions of this Code.

2. The Occupational Licensing Department shall issue or deny an application for an Adult Entertainment License within sixty (60) days from the date of the filing acceptance of a complete application. Upon the expiration of the sixty (60) day period the applicant may demand a license and begin operating the establishment for which a license is sought, unless and until the Occupational Licensing Department notifies the applicant of a denial of the license application and states the reasons for the denial.

The date of the proper filing of the application shall be the date the applicant furnishes the fully completed and sworn application and the required number of copies.

3. If the application has satisfied the requirements of this Code, the Occupational Licensing Department shall notify the applicant and issue the license to the applicant upon payment of the appropriate annual license fee

provided in Part II(G)(6), with credit as provided in Part II(C)(3).

4. The Occupational Licensing Department shall deny the application <u>upon notification by</u> ~~if~~ one of the departments <u>which</u>:

a. finds the application violates or fails to meet the provisions of this Code;

b. states the application contains material false information;

c. states the applicant or any of the other individuals listed pursuant to Part II(J) has a license under this Code which has been suspended or revoked; or

d. states the granting of the application would violate a statute or ordinance, or an order from a Court of law which effectively prohibits the applicant from obtaining an Adult Entertainment License.

5. ~~If the application is denied, the Occupational Licensing Department shall notify the applicant with the reason(s) stated for the denial. Notification shall be sent certified U.S. Mail, return receipt requested, to the address provided on the license application which shall be considered the correct address. Each applicant has the burden to furnish any changed address to the Occupational Licensing Department, by U.S. Certified Mail return receipt requested.~~

F. Establishment Existing on Effective Date.

1. Operators of Adult Entertainment Establishments existing and operating on the effective date of this ordinance shall make an application for license hereunder, complete with all required information hereunder and the required number of copies, ~~within sixty (60) days of said effective date~~ <u>within sixty (60) days of the effective date of this amendment to the Adult Entertainment Code</u>. After completion of the application, said establishment shall be permitted to operate until October 1, 1989 pending issuance of the license or until the application for license is denied, whichever comes first.

.    .    .    .    .

8. <u>Any conviction for violation of this code, including but not limited to violations which occur between the effective date and when the existing establishments obtain an Adult Entertainment License (as outlined in (F)(1) above), shall be considered and applied to the suspension provisions outlined in Part II(J) below.</u>

<u>9</u>8. Except for the above provisions, all the provisions of this Part and Ordinance shall apply to such licensees.

G. License.

5. Cancellation. All expired Licenses not renewed by November 30 ~~and each succeeding month~~ shall be cancelled summarily by the Occupational Licensing Department, unless such License is involved in litigation. <u>The applicant may reapply for an Adult Entertainment License. Upon the payment of the application fee, satisfaction of the application requirements and payment of the License Fee, operation of the Adult Entertainment Establishment may again occur.</u>

6. Annual License Fees

<u>f. Other adult establishment/establishments meeting the definition of adult entertainment establishment in Section I G.5.a. but not fitting in categories listed above in Section II G.6.a through e—eight hundred dollars ($800.00).</u>

<u>g</u>~~f~~. The annual License fees collected under this Code are declared to be regulatory fees which are collected for the purposed of examination and periodic inspection of Adult Entertainment Establishments pursuant to this Code and the administration thereof. These regulatory fees are in addition to and not in lieu of the Occupational License <u>fees</u> ~~taxes~~ imposed by other sections of the County Code of Palm Beach County, Florida.

hg.  The fees shall be based upon the information contained in the License application, subject to verification, by inspection, by the Building Division and Sheriff.

ih.  The fee schedule contained in (6)(a-~~d~~f) may be revised pursuant to resolution adopted by the Board when necessary to insure the fees cover the costs of administering and enforcing this Ordinance.

．　　．　　．　　．　　．

H.  Transfer of License.

．　　．　　．　　．　　．

3.  Any attempted transfer of a License either directly or indirectly in violation of this Section is hereby declared void, and the License shall be deemed abandoned and the License shall be forfeited. ~~and revert to the Occupational Licensing Department.~~

．　　．　　．　　．　　．

J.  Enforcement.

1.  Suspension.

~~a.  Violation of Regulations.  In the event a Licensed Adult Entertainment Establishment is operating in violation of a building, fire, health, or zoning statute, code, ordinance or regulation, whether federal, state, or local, or the respective general requirements of Part III(A), the appropriate citing department shall promptly notify the Occupational Licensing Department who shall notify the Licensee of the violation and shall allow the Licensee a ten (10) business day period in which to correct that violation.  If the Licensee fails to correct the violation within the ten (10) business day period, the citing Department shall notify the Occupational Licensing Department, who shall forthwith suspend the License and shall notify the Licensee of the suspension.  The suspension shall remain in effect until the citing Department notifies the Occupational Licensing Department in writing that the violation of the provision in question has been corrected.~~

a.  Violation of Regulations.  In the event a licensed Adult Entertainment Establishment is operating in violation of a building, fire, health, or zoning statute, code, ordinance, or regulation, whether federal, state, or local, or the respective requirements of Part III of this code, the appropriate citing department shall promptly notify the Code Enforcement Division who shall notify the Licensee of the violation and shall allow the Licensee a ten (10) business day period in which to correct that violation.  If the Licensee fails to correct the violation within the ten (10) business day period, the citing department shall notify the Code Enforcement Division who shall schedule a hearing before the Code Enforcement Board.  If the Code Enforcement Board determines that a licensed establishment is in violation of a building, fire, health, or zoning statute, code, ordinance, or regulation, whether federal, state, or local, or the respective general requirements of Part III(A), the Code Enforcement Board shall notify the Occupational Licensing Department, who shall forthwith suspend the license and shall notify the Licensee of the suspension.  The suspension shall remain in effect until the Code Enforcement Division notifies the Occupational Licensing Department in writing that the violation of the provision in question has been corrected.  Nothing in this section shall take away any other enforcement powers of the Code Enforcement Board or any other agency provided by County Code or statute.

b.  Illegal Transfer.  ~~In the event the Occupational Licensing Department or other~~ Upon the formal notification by one of the Departments ~~are notified, learn or find~~ that a Licensee engaged in a license transfer contrary to Part II(H), the Occupational Licensing Department shall officially ~~forthwith~~ suspend the License, and notify the Licensee of the suspension.  The suspension shall remain in effect until all of the requirements of Part II have been sat-

isfied and a new License is issued by the Occupational Licensing Department.

. . . . .

d. Effect of Suspension. If a License is suspended, all operations within the Adult Entertainment Establishment shall cease for the period of the suspension, the ~~Occupational~~ License shall be suspended for the suspension period. The Department of Beverage shall be notified of the suspension and no other person shall be allowed to operate an Adult Entertainment Establishment at that location.

. . . . .

## III. REGULATORY PROVISIONS

. . . . .

B. Prohibition of Alcoholic Beverages.
  1. Prohibition.
     (a) No person or employee shall expose to public view his or her human genitals, pubic region, or cleavage of the human buttocks or any simulation thereof in any establishment selling, serving, or allowing the consumption of alcoholic beverages.
     (b) No person maintaining, owning or operating an establishment serving alcoholic beverages shall suffer or permit any person or employee to expose to public view his or her human genitals, pubic region, or cleavage of the human buttocks or simulation thereof within the establishment selling, serving, or allowing the consumption of alcoholic beverages.
     (c) No person maintaining, owning or operating an establishment serving alcoholic beverages shall suffer or permit any human genitals, pubic region, or cleavage of the human buttocks or the simulation thereof within the establishment selling, serving, or allowing the consumption of alcoholic beverages.
     (d) No person shall cause and no person maintaining, owning or operating an establishment serving alcoholic beverages shall suffer or permit the exposition of any graphic representation, including pictures or projection of film, which depicts specified anatomical areas, engage in any specified sexual activities or any other sexual act prohibited by law, or any simulation thereof, within any establishment selling, serving, or allowing the consumption of alcoholic beverages.

. . . . .

## IV. CRIMINAL PROVISIONS

. . . . .

L. Hours of Operation.
  1. Except in (3) below, it shall be unlawful for any operator of an Adult Entertainment Establishment to allow such establishment to remain open for business, or to permit any employee to engage in a performance, solicit a performance, make a sale, solicit a sale, provide a service, or solicit a service, between the hours of 2:00 a.m. and 9:00 a.m. of any particular day.
  2. Except in (4) below, it shall be unlawful for any employee of an Adult Entertainment Establishment to engage in a performance, solicit a performance, make a sale, solicit a sale, provide a service, or solicit a service, between the hours of 2:00 a.m. and 9:00 a.m. of any particular day.
  3. ~~These hours of operation limitations shall supersede to the extent of conflict the hours of operation contained in Section 3-2 of Palm Beach County Code (Ordinance 75-23).~~ Any operator of an Adult Dancing Establishment which is permitted to sell, serve, or allow the consumption of alcoholic beverages, pursuant to III, above, may remain open for business, or to permit an employee to engage in a performance, solicit a performance, make a sale, solicit a sale, provide a service, or solicit a service during the hours of operation outlined in Section 3-2 of the Palm Beach County Code.
  4. Any employee of an Adult Dancing Establishment which is permitted to

sell, serve, or allow the consumption of alcoholic beverages, pursuant to III B, above, may engage in a performance, solicit a performance, make a sale, solicit a sale, provide a service, or solicit a service during the hours of operation outlined in Section 3–2 of the Palm Beach County Code.

Section 2. CAPTIONS.

The captions, section headings, and section designations used in this amendment are intended for convenience of usage only. It shall have no affect on the interpretation of the provisions of this Ordinance.

Section 3. LAWS IN CONFLICT.

All local laws and ordinances applying to Palm Beach County in conflict with any provisions of this Ordinance are hereby superseded to the degree of conflict.

Section 4. SEVERABILITY.

If any part of this Code, or any application thereof to any person or circumstance is declared to be void, unconstitutional or invalid for any reason, such portion or provision, or the application thereof, shall be severable from this Code. The remaining portions and provisions of this Code, and all applications thereof shall remain in full force and effect. In the event a part or section of this code is declared void, unconstitutional or invalid, the Board declares that that portion or proscribed provision, or application thereof, was not an inducement to the enactment of this Code.

Section 5. INCLUSION IN CODE.

The provisions of this Ordinance shall become and made a part of the Code of Laws and Ordinances of Palm Beach County, Florida and the various sections may be retitled, renumbered, or relettered to accomplish this letter.

Section 6. EFFECTIVE DATE.

The provisions of this Ordinance shall become effective upon receipt from the Secretary of State.

APPROVED AND ADOPTED by the Board of County Commissioners of Palm Beach County, Florida, on the _____ day of _____, 19__.

Board of County Commissioners
Palm Beach County, Florida
By: _____
        Chair

APPROVED AS TO FORM AND LEGAL SUFFICIENCY

/s/ [Signature]
County Attorney

Acknowledgement by the Department of State of the State of Florida, on this, the _____ day of _____, 19__.

EFFECTIVE DATE: Acknowledgement received from the Department of the State of Florida, this _____ day of _____, 19__, at ___.m., and filed in the Office of the Clerk of the Board of County Commissioners of Palm Beach County, Florida.